# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00289-CV

**Freightliner Corporation and Ford Motor Company, Appellants**

**v.**

**Motor Vehicle Board of the Texas Department of Transportation and
Metro Ford Truck Sales, Inc., Appellees**

### DIRECT APPEAL FROM THE MOTOR VEHICLE BOARD
### OF THE TEXAS DEPARTMENT OF TRANSPORTATION

## O P I N I O N

In this direct appeal, we consider whether an agency can, on remand after courts have considered and affirmed the agency's decision in part, revisit an issue affirmed by the courts and reverse the original result based on the same record. Based on the procedural history of this case, we conclude that the Motor Vehicle Board of the Texas Department of Transportation did not have the power on remand to revisit its original determination that Ford Motor Company had good cause to terminate Metro Ford Truck Sales, Inc.'s truck dealer's franchise. We reverse the Board's order entered after remand in which the Board found that Ford did not have good cause to terminate Metro's franchise. We remand for any necessary proceedings that follow the determination that a manufacturer has good cause to terminate its truck dealer's franchise.

Ford first tried to terminate Metro's truck franchise more than a decade ago.[1] In 1993, complaints by competing dealers prompted Ford to investigate Metro's administration of Ford's Competitive Price Assistance ("CPA") program. Discovering what it believed to be improprieties, Ford sought to terminate Metro's franchise to sell Ford trucks. Metro filed a protest, triggering a proceeding before the Board to determine whether Ford had good cause to terminate the franchise. *See* Tex. Occ. Code Ann. § 2301.453 (West 2004).[2] The filing of the protest prompted the entry of a statutory stay that prevented the parties from committing any act or omission that would affect a legal right, duty, or privilege of any party before the Board. *Id.* § 2301.803 (West 2004).

In 1997, while the administrative proceeding was pending, Ford sold assets of its heavy-duty truck division to Freightliner Corporation and withdrew from selling heavy-duty trucks. Ford heavy-duty truck dealers in good standing could apply to be Freightliner franchisees. The administrative law judge joined Freightliner as a necessary party to the proceeding and made Freightliner subject to the stay, requiring Freightliner to provide Metro with the same heavy-duty trucks that Ford had provided. Freightliner provided heavy-duty trucks to Metro through Sterling Truck Corporation. Ford continued to manufacture and distribute light- and medium-duty trucks through its franchisee dealers, including Metro.

---

[1] A more detailed history of this cause is set out in this Court's previous opinion on this cause. *See Ford Motor Co. v. Motor Vehicle Bd.*, 21 S.W.3d 744, 748-54 (Tex. App.—Austin 2000, pet. denied).

[2] The statutes governing the procedures for terminating or transferring a motor vehicle sales franchise have been codified into the occupations code since these proceedings were filed. The decision under review was made after the codification. For ease of reference, we will cite to the current code provisions.

In 1998, the Board adopted the 48 findings of fact and 4 conclusions of law proposed by the administrative law judge.  The Board found that Metro misused the CPA program and that some Ford district and regional employees were aware of that misuse.  The last finding of fact and first conclusion of law are central to the resolution of this appeal:

> 48.  In light of the above findings of fact, a reasonable resolution to Ford's request for termination of Metro's franchise agreement is for Metro to be require[d] to sell the dealership to a buyer of Ford and Freightliner's choosing at a price established by an independent appraiser.
>
> . . . .
>
> 1.  Ford has established good cause for the termination of Metro's franchise agreements in accordance with §§ 5.02(b)(3) and 5.02(b)(5) of the TMVC Code.

Metro sought judicial review of the 1998 Board decision.  The district court, in its judgment in the initial suit for judicial review, wrote the following:

> The court finds that the board's finding of good cause for termination of Metro Ford Truck Sales, Inc. is supported by substantial evidence.  The court concludes that the board may impose a remedy short of complete termination.  The court concludes, however, that the remedy imposed in the order is unlawful.  The court REMANDS to the Motor Vehicle Board for the board to make a new order consistent with these proceedings.

*See Metro Ford Truck Sales, Inc. v. Motor Vehicle Bd., Texas Dep't of Transp.*, No. 98-07064 (353d Dist. Ct., Travis County, Tex. Apr. 12, 1999).

3

This Court affirmed the district court's decision.[3]  In its judgment, this Court wrote that "the judgment of the trial court is in all things affirmed."  In its opinion, this Court explained, "Having concluded that there is substantial evidence to support the Board's finding of good cause to terminate Metro and that the Board's imposition of the specific conditions is unlawful, we affirm the portion of the district court judgment relating to the imposition of the conditions." *Ford Motor Co. v. Motor Vehicle Bd.*, 21 S.W.3d 744, 766 (Tex. App.—Austin 2000, pet. denied).  This Court proceeded to "remand the cause to the Board for further proceedings not inconsistent with this opinion." *Id.* at 767.  Thus, the Board's original finding in Conclusion of Law No. 1 that there was good cause for Ford to terminate Metro's dealership was affirmed, and the condition the Board imposed with respect to the sale of the dealership in Finding of Fact No. 48 was reversed.  The cause was remanded for the Board to consider other available remedies in light of its finding of good cause for termination.  After the supreme court denied the petition for review, mandate issued on May 25, 2001.

The Board did not dispose of this cause until almost four years later.  In a Supplemental Proposal for Decision After Remand signed January 11, 2002, the ALJ proposed a new order that did not disturb the finding of good cause for termination. The ALJ expressly considered what "termination conditions" might be acceptable.  The ALJ proposed replacing Finding of Fact

---

[3] This Court issued an opinion and judgment on April 27, 2000.  The Court withdrew the original opinion and judgment on rehearing and substituted a new opinion and judgment on June 22, 2000.  Then on July 27, 2000, the Court substituted a page of the opinion on rehearing.  As discussed below, appellees seek support for some of their arguments from differences between the original and the substituted opinions.  In this paragraph, we refer only to the final versions of the opinion and judgment.

4

No. 48 from the original order with two findings requiring Ford and Freightliner to establish a new dealer or dealers to replace Metro before terminating Metro's franchise, thus avoiding a break in service to entities reliant on Metro, and also proposed adding a conclusion that Metro would not be able to protest the new dealers. On April 25, 2002, the Board tabled consideration of this supplemental proposal and revived a proceeding in which Metro challenged appellants' refusal to allow Metro to transfer the franchise.

Metro filed protests challenging the reasonableness of appellants' rejection of two proposed transfers of the franchise. The Board's decisions in those proceedings are the subject of appeals argued concurrently with this appeal. *Sterling Truck Corp. v. Motor Vehicle Bd.*, No. 03-05-00288-CV (Tex. App.—Austin May 1, 2008) (*Metro V*); *Ford Motor Co. v. Motor Vehicle Bd.*, 03-05-00290-CV (Tex. App.—Austin May 1, 2008) (*Metro IV*). Briefing by the parties indicates that other proceedings not before this Court also transpired among the parties while this cause was tabled.

On February 3, 2005, after hearing further argument, the Board issued its Final Order After Remand without taking any additional evidence. Ford argued that the Board did not have the authority to revisit the good cause determination. Metro focused on the judicial approval of remedies short of absolute termination and argued that the district court generally remanded the entire case. The Board readopted all of the findings and conclusions from the original order except Finding of Fact No. 48 and Conclusion of Law No.1. The Board rejected those two and, in their stead, added the following:

> Finding of Fact No. 49.  In considering all the existing circumstances surrounding the proposed termination of Metro, including Metro's actions, the knowledge of Ford employees about Metro's actions, the realities of the CPA program, and the public need for continued Ford and Sterling medium and heavy truck service in Metro's trade area, Ford has failed to show good cause for the termination of Metro's franchise agreements.
>
> . . . .
>
> Conclusion of Law No. 5.  Ford failed to show good cause for the termination of Metro's franchise agreements in accordance with §§ 5.02(b)(3) and 5.02(b)(5) of the TMVC Code.

The Board granted Metro's protest of termination, ordered Ford to cease all termination efforts, and ordered Metro to transfer its franchise to Stanley Graff in accord with the Board's final order issued the same day in *Metro V*.  This direct appeal followed.

Appellants Ford and Freightliner contend that the Board exceeded its power on remand by revisiting its finding that Ford had good cause to terminate Metro's franchise.  Appellants contend that the scope of the case remanded did not include the good cause finding.  They assert that the Board was limited to the ministerial duty of entering an order finding good cause for termination.

Metro and the Board respond that this Court's decision in 2000 did not require the Board to leave the finding of good cause undisturbed.  Appellees argue that this Court could not and did not limit its remand.  They contend that, because courts can only identify error and only agencies can correct error, this Court did not have the power to dictate a remedy, but properly left that up to the Board.  Appellees also contend that this Court's previous opinion recast the context of the good cause determination, requiring the Board to revisit that determination on remand.  They also argue that our previous affirmance of the good cause finding does not prevent us from affirming the current

6

"no good cause" finding based on the identical record because substantial evidence can support diametrically opposed findings.

We review the Board's order under the substantial evidence rule. Tex. Occ. Code Ann. § 2301.751 (West 2004). Under that standard of review,

> a court may not substitute its judgment for the judgment of the state agency on the weight of the evidence on questions committed to agency discretion but:
>
> (1) may affirm the agency decision in whole or in part; and
>
> (2) shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
>> (A) in violation of a constitutional or statutory provision;
>>
>> (B) in excess of the agency's statutory authority;
>>
>> (C) made through unlawful procedure;
>>
>> (D) affected by other error of law;
>>
>> (E) not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or
>>
>> (F) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Tex. Gov't Code Ann. § 2001.174 (West 2000).

The threshold issue in this appeal is whether the Board properly reconsidered its judicially affirmed determination that Ford had good cause to terminate Metro's franchise. Resolution of that issue turns on whether courts generally have the power to limit the scope of issues remanded to agencies and whether the courts did so in this cause. Courts have circumscribed the

7

scope of a remand to an administrative agency. *See Public Util. Comm'n v. GTE-SW*, 833 S.W.2d 153, 175 (Tex. App.—Austin 1992), *aff'd in part, rev'd in part on other grounds*, 901 S.W.2d 401 (Tex. 1995); *First Sav. & Loan Ass'n v. Lewis*, 512 S.W.2d 62, 64 (Tex. Civ. App.—Austin 1974, writ ref'd n.r.e.); *see also Allen-Burch, Inc. v. Texas Alcoholic Beverage Comm'n*, 104 S.W.3d 345, 350 (Tex. App.—Dallas 2003, no pet.). We begin by reviewing the source of the judicial power to control the scope of remand to an agency.

To determine the extent and nature of any judicial power to limit the scope of issues remanded to an agency, we must examine the statute establishing judicial review of agency decisions. *See* Tex. Gov't Code Ann. § 2001.174. Our primary objective in construing a statute is to determine and effectuate the legislature's intent. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003); *see also* Tex. Gov't Code Ann. § 311.023(1) (West 2005). We give effect to the plain and unambiguous meaning of the words in the statute. *McIntyre*, 109 S.W.3d at 745. We may not adopt a construction that will render any part of the statute inoperative, superfluous, or without legal effect. *See Ex parte Pruitt*, 551 S.W.2d 706, 709 (Tex. 1977); *Texas Prop. & Cas. Ins. Guar. Ass'n v. Johnson*, 4 S.W.3d 328, 333 n.5 (Tex. App.—Austin 1999, pet. denied).

The statute expressly authorizes courts reviewing agency decisions to affirm in whole or in part, and requires courts to reverse or remand for further proceedings when an agency's errors deprive a party of substantial rights. *See* Tex. Gov't Code Ann. § 2001.174. An affirmance in part with a remand necessarily implies that the issues affirmed are resolved and that the remaining issues will be disposed of in some other way. Otherwise, if a remand to an agency necessarily meant that all issues were subject to being re-litigated, there would be no point in the court affirming

8

any portion of the agency ruling and no reason for the legislature to have included affirmance in part as an option for the court. The resolution of the issues affirmed would be no resolution at all. We will not presume the legislature intended such a result. The power to affirm in part and remand is meaningless if the partial affirmance has no effect on remand. We reject an interpretation that renders statutory language meaningless. If the legislature had intended that finding any error required remand of the entire administrative cause without limitation, it could have expressed that intent. It did not. The statute plainly authorizes affirmances in whole, affirmances in part, reversals, and remands. Appellees' interpretation of the courts' power would read affirmances in part out of the statute.

Appellees contend that courts can only identify error and must remand the case generally to allow agencies to correct any errors. *See Ford Motor Co. v. Butnaru*, 157 S.W.3d 142, 149 (Tex. App.—Austin 2005, no pet.); *Pantera Energy Co. v. Railroad Comm'n*, 150 S.W.3d 466, 474 n.9 (Tex. App.—Austin 2004, no pet.); *Employees' Ret. Sys. v. McKillip*, 956 S.W.2d 795, 802 (Tex. App.—Austin 1997), *overruled on other grounds*, *Texas Natural Res. Conservation Comm'n v. Sierra Club*, 70 S.W.3d 809, 814 (Tex. 2002). This Court has written:

> In a suit for judicial review of an agency action, the reviewing court is empowered to issue only a general remand when it finds error that prejudices an appellant's substantial rights. Although courts have authority to hold that an agency erred and must correct its error, courts cannot dictate how to correct the error if, by doing so, the court effectively usurps the authority and discretion delegated to the agency by the legislature.

*Butnaru*, 157 S.W.3d at 149 (citations omitted).

This language in *Butnaru* and similar cases does not prohibit courts from affirming parts of an agency order and remanding other parts. The key language from the opinion is that a court must issue a general remand "when it finds error" and that a court may not dictate how to correct the error "if by doing so" it would usurp the agency's authority. *Id.* A court finds no error in the part of a decision it affirms and, therefore, does not need to remand it for further consideration. We find no authority for the proposition that a court exercising its statutory power to affirm part of an agency decision under its review necessarily usurps agency authority by declining to remand the issue affirmed. Whether any usurpation of agency authority occurs must, at minimum, be assessed on a case-by-case basis. The *Butnaru* opinion does not invalidate the statutory authorization of a partial affirmance. It addresses the limited control courts can exert over the agency's proceedings with respect to issues remanded. *See id.*; *see also Pantera*, 150 S.W.3d at 474 n.9. Consistent with that holding, this Court has rejected trial court attempts to control the agency's proceeding on issues reversed and remanded to the agency. *Butnaru*, 157 S.W.3d at 149 (trial court erred by requiring agency to conduct investigation on remand); *McKillip*, 956 S.W.2d at 802 (trial court erred by directing agency to adopt proposal for decision); *see also Pantera*, 150 S.W.3d at 476 (affirming trial court's dismissal of appeal as moot and rejecting request to render decision agency "should have"). These opinions do not prohibit the judicial affirmance of some parts of the agency's decision and the removal of those parts from the scope of the remand. Although courts may not be authorized to dictate *how* an agency conducts its review of remanded issues or decides them, the express power to affirm in part necessarily means that courts have some control over *what issues* the agency can reconsider on remand subject to the limitations of judicial authority over agencies.

10

We find further support for our interpretation of the effect of a partial affirmance in the obligation of appellate courts to decide only the issues necessary to the disposition of the appeal. *See* Tex. R. App. P. 47.1. Under appellees' views of the limitations on judicial review, the finding of a single basis for reversal would require remand of the entire case, meaning that no controversy existed as to any other appellate issue—all issues would be reversed regardless of the merits. Affirmance of part of a decision that is nevertheless swept into a global remand would be unnecessary to the disposition of the appeal, essentially advisory, and therefore not generally a proper action for an appellate court. *See id.*; *see also Brown v. Lubbock County Comm'rs Ct.*, 185 S.W.3d 499, 505 (Tex. App.—Amarillo 2005, no pet.) (citing *Valley Baptist Med. Ctr. v. Gonzalez*, 33 S.W.3d 821, 822 (Tex. 2000)). The legislature's authorization of partial affirmance must not be meaningless.

This power to limit subsequent agency proceedings on remand is also consistent with the judicial doctrine of limited remand. *See Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986); *McConnell v. Wall*, 5 S.W. 681, 681 (Tex. 1887). When an appellate court remands a case and limits a subsequent trial to a particular issue, the trial court is restricted to a determination of that particular issue. *Hudson*, 711 S.W.2d at 630.

We conclude that a court's affirmance in part of an agency decision binds the agency to that part of the decision affirmed and limits the scope of issues the agency considers on remand. The proceedings in the agency after remand must give effect to the reviewing court's judgment

11

within the range of actions the agency is empowered to take. *See Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 615 S.W.2d 947, 954 (Tex. App.—Austin 1981, writ ref'd n.r.e.).[4]

The power to limit remand must be expressly exercised. The supreme court has written and reiterated that "the cases are rare and very exceptional in which this court is warranted in limiting the issues of fact, in reversing and remanding a case where the trial has been by jury; and to authorize such interpretation, it must clearly appear from the decision that it was so intended."[5] *Hudson*, 711 S.W.2d at 630 (quoting *Cole v. Estell*, 6 S.W. 175, 177 (Tex. 1887)). The same rules of interpretation apply in ascertaining the meaning of court orders or judgments as in ascertaining the meaning of other written instruments. *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404-05 (Tex. 1971). If the judgment is plain and unambiguous, extrinsic matters may not be considered in order to give the decree a different effect from that expressed by the literal meaning of the words used therein. *McLeod v. McLeod*, 723 S.W.2d 777, 779 (Tex. App.—Dallas 1987, no writ). On the other hand, if the judgment is ambiguous, the entire content of the judgment and the record should be considered. *See Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987) (per curiam); *Lone Star Cement*, 467 S.W.2d at 404-05. If the language of the judgment is susceptible to more than one interpretation, the one that renders the judgment more reasonable,

---

[4] This opinion should not be misread to foreclose a court from remanding an entire administrative proceeding based on an error in part of the decision challenged on appeal. The court may find that a single error affected the entire decision-making process such that the agency must have the opportunity to review the case as a whole. We hold only that courts are not required to remand the entire cause when finding error in only a portion of an agency decision.

[5] The supreme court's strict limitation regarding instances in which "this court"—referring to itself—can reverse on issues of fact may be influenced by the constitutional provision making decisions by courts of appeals conclusive on questions of fact. *See* Tex. Const. art. V, § 6; *Campbell v. State*, 85 S.W.3d 176, 184 (Tex. 2002).

12

effective, and conclusive, and that harmonizes it with the facts and the law of the case, should be adopted. *State Farm Lloyds, Inc. v. Williams*, 791 S.W.2d 542, 546 (Tex. App.—Dallas 1990, writ denied) (citing *Duff v. Collins*, 225 S.W.2d 213, 215 (Tex. Civ. App.—Austin 1949, writ ref'd n.r.e.)). The opinion of the appellate court is instructive in interpreting any limitations placed on the scope of the remand. *Hudson*, 711 S.W.2d at 630.

The trial court's judgment underlying the previous appeal excluded the good cause determination from the scope of the remand in this case. The trial court expressly affirmed part of the Board's decision, reversed part of the decision, and remanded for further proceedings. The trial court's express finding of substantial evidence to support the good cause finding is a judgment affirming the Board's finding of good cause. That finding was discussed separately from the conclusion that the remedy imposed was unlawful, which was followed immediately by the order of remand. This language and structure show that the trial court's order did not include the affirmed good cause determination within the scope of the remand.

This Court's prior opinions and judgments in this case reinforce that the good cause determination was not within the scope of issues remanded. Appellees cite changes between the original judgment and the judgment on rehearing, the language of the opinion and judgment on rehearing, and proceedings on the Board's second motion for rehearing[6] as showing that the entire cause was remanded. We conclude that this Court did not, at any stage of the refinement of the opinion and judgment, generally remand the entire cause to the Board.

---

[6] The actual title of the motion was "Motor Vehicle Board's Motion for Rehearing of Any Changes to the Court's Opinion Caused by the Substitution of Page 41." It was filed after the opinion on rehearing was modified with a substituted page 41. For convenience, we will refer to this motion as a second motion for rehearing.

13

In its original judgment, this Court affirmed the trial court's judgment except to order "that the portion of the judgment regarding the conditional termination of the Metro Ford Truck Sales, Inc. franchise is reversed, and *that portion* of the cause is remanded to the Motor Vehicle Board for further proceedings consistent with this Court's opinion." (Emphasis added.) This disposition did not remand the entire cause. However, this partial reversal of the trial court's judgment was inconsistent with the extensive discussions in this Court's opinion agreeing with the trial court's approval of the Board's good cause determination and rejection of the Board's forced sale provision. Instead of using decretal language affirming the trial court's judgment consistent with the opinion, this Court's original judgment disposed of the trial court's judgment the way the reasoning in this Court's opinion indicated the Board's order should be treated—indeed, the way the trial court treated the Board's order.

Accordingly, in its judgment on rehearing, this Court simply affirmed the trial court's judgment. The modification of the opinion and judgment on rehearing did not disturb the good cause determination. The good cause determination was affirmed under the trial court's judgment and this Court's original and revised judgments. In its opinion on rehearing, this Court affirmed the Board's finding of good cause for termination:

> We affirm the termination of the Metro franchise for good cause, the refusal to transfer the dealership to Eileen Beard, and the denial of Ford's requested chargeback expenses. We affirm the portion of the district court judgment concluding that the Board may, in certain circumstances, impose a remedy short of complete termination, and we further affirm that the conditions imposed in the order are unlawful for the reasons stated.

14

*Ford Motor Co. v. Motor Vehicle Bd.*, No. 03-99-00265-CV (Tex. App.—Austin June 22, 2000) (second sentence later replaced with version found at *Ford*, 21 S.W.3d at 767). This language affirms the trial court's judgment that, as discussed, did not remand the good cause determination.

This Court's disposition of the Board's second motion for rehearing further undermines appellees' argument that this Court remanded the good cause determination. On July 27, 2000, this Court substituted a new version of the last page of its opinion on rehearing. This new version changed the second sentence of the conclusion above to the final version, which provides as follows:

> We affirm the termination of the Metro franchise for good cause, the refusal to transfer the dealership to Eileen Beard, and the denial of Ford's requested chargeback expenses. We affirm the district court judgment holding that the conditions imposed in the order are unlawful for the reasons stated in this opinion, and we remand the cause to the Board for further proceedings not inconsistent with this opinion.

21 S.W.3d at 767. The Board sought additional refinement of the judgment and opinion because it was concerned that appellants might use the revised opinion on rehearing to argue that, on remand, the Board could consider only whether or how to condition termination of the franchise. The Board argued that the granting of its first motion for rehearing indicated acceptance of its argument that the entire cause—including the good cause determination—was remanded. The Board contended that full remand was required because in rejecting the forced sale, which was "so intrinsically part of the Board's ruling," the courts had "interpreted the Motor Vehicle Commission Code in a way that the agency did not when making the determination of good cause." The Board requested clarification that the good cause determination was remanded along with the rest of the cause. The Board wrote

15

that it preferred "not to wait for this issue to ripen into a post-remand adversarial appellate matter with Ford and Freightliner relying on the changed conclusions and the Board relying on the opinion and judgment."

This Court overruled the second motion for rehearing without altering its opinion or judgment. In the face of the Board's argument that the opinion and judgment on rehearing might be misinterpreted to authorize a limited remand, this Court's refusal to alter its opinion and judgment are informative regarding their meaning. The sentence structure of the conclusion is even more telling in its differential treatment of affirmed holdings. The good cause determination was grouped with other affirmed holdings for which no other disposition was discussed. The affirmed holding regarding imposition of conditions was the only holding in the sentence discussing remand. This sentence structure supports the view that the remand relates only to the "remedy" aspect of the Board's order. This Court's rejection of the second motion for rehearing, which raised the argument for full remand that is raised in this appeal, indicates that the trial court and this Court affirmed the good cause determination and did not remand it.

Appellees contend that the Board nevertheless had the power to reconsider good cause because this Court does not have the power to dictate to the agency what its remedy must be. *See Sierra Club v. Texas Natural Res. Conservation Comm'n*, 26 S.W.3d 684, 688 (Tex. App.—Austin 2000), *aff'd*, 70 S.W.3d 809 (Tex. 2002); *Texas Dep't of Transp. v. T. Brown Constructors, Inc.*, 947 S.W.2d 655, 659 (Tex. App.—Austin 1997, pet. denied). Limiting the scope of issues to be considered on remand is not the same as dictating a remedy. The fact that an agency may find itself constrained to a ministerial act on remand does not necessarily mean that a court has impermissibly

16

dictated a remedy. Agencies are creatures of statute and their powers are limited by their enabling statutes. *City of Allen v. Public Util. Comm'n*, 161 S.W.3d 195, 209 (Tex. App.—Austin 2005, no pet.) (quoting *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 137 (Tex. App.—Austin 1986, writ ref'd n.r.e.)). Those statutes, the agency's regulations, and the facts of a particular case may constrain the agency such that it has only one option in dealing with an application or contested case—essentially a ministerial duty to perform an act. *See, e.g.*, *State Bd. of Med. Exam'rs v. Mann*, 413 S.W.2d 382, 385 (Tex. 1967). We see no compelling reason that the situation would be different on remand after judicial review. Courts are legislatively empowered to limit the scope of a remand to the part of an order that contains error. *See* Tex. Gov't Code Ann. § 2001.174; *see also GTE-SW*, 833 S.W.2d at 175. Limiting the scope of a remand may have the effect of dictating a particular course of action or result when taken in conjunction with the controlling law and procedural and substantive facts. However, the fact that an agency has only one course of action after a partial remand does not necessarily mean that the court's disposition exceeded its power.

In this case, the courts did not dictate to the Board how to proceed on the issues remanded. The courts affirmed and did not remand the good cause determination. The trial court found substantial evidence to support the good cause finding, opined that the Board "may impose a remedy short of complete termination," held the remedy imposed unlawful, and remanded for the Board "to make a new order consistent with these proceedings." Affirming the trial court's judgment, this Court remanded the cause to the Board "for further proceedings not inconsistent with this opinion." *Hudson*, 711 S.W.2d at 767. The courts' judgments and the final opinion recognize that the Board has powers apart from determining the existence of good cause that may

17

allow it to take actions that amount to placing conditions on the termination of a franchise. *See, e.g.*, Tex. Occ. Code Ann. § 2301.453(h) (establishment of new franchise), § 2301.465 (West 2004) (windup of franchise). Rather than impose a remedy or dictate how the Board must correct the erroneous placement of conditions on termination, the courts remanded this case to the Board to use its discretion in exercising the powers granted it for proceedings following a finding of good cause for termination. The courts did not include "detailed instructions on how the commission should determine the duration issue on remand," as the district court erred by doing in *BFI*, 93 S.W.3d at 579 n.9, or instruct the agency to adopt a proposal for decision, as the district court erred by doing in *McKillip*, 956 S.W.2d at 801. Affirming the action the Board had taken (finding good cause to terminate) did not dictate a remedy, nor did reversing the condition placed on remand (forced sale). The remand for further proceedings without further direction permitted the Board to resume exercising its discretion from the point at which it exceeded its authority. Indeed, we note that, in the original proposed supplemental findings of fact and conclusions of law, the ALJ did not revisit the good cause determination.

Appellees contend that this Court was not empowered to exclude the good cause determination from the remand because the opinion altered the elements of the good cause determination. They cite the legislature's requirement that the Board consider "all circumstances" when determining whether good cause to terminate existed. *See* Tex. Occ. Code Ann. § 2301.455 (West 2004) (non-exclusive list of circumstances to consider). The Board contends that its belief that it could order and control the sale of the dealership was a relevant circumstance and the decisive factor in its good cause determination. This Court's final opinion on rehearing acknowledged

18

that the termination conditioned on the forced sale indicated that the Board's good cause determination may have been improperly influenced by the windup remedies and the belief it could control the disposition of the franchise. *Ford*, 21 S.W.3d at 766. The Board argues that the good cause determination must have been within the scope of the remand because not allowing it to reconsider the good cause determination in these circumstances would have improperly infringed on its exercise of discretion on remand.

However, the good cause determination was not remanded. Had this Court intended to remand the entire case, it would not have affirmed the trial court's affirmance of the good cause determination. The proper ruling, both here and in the trial court, would have been to reverse the good cause determination because it was based on an improper legal theory and to remand for a new determination of the good cause issue as well. The phrasing of footnote 19 shows that this Court viewed the good cause determination as a precursor to and separate from the improper condition placed on termination. *See Ford*, 21 S.W.3d at 766 n.19 ("Although we do not go so far as to hold that the Board can never impose a condition on termination *once good cause is* found . . . ." (emphasis added)). The structure of the opinion's conclusion set out above reinforces the distinction between the affirmed good cause determination and the remanded post-termination "remedies." This Court's refusal to change its opinion or judgment based on the Board's second motion for rehearing emphasizes the refusal to remand the whole case. This Court was not persuaded by the Board's argument that the opinion interpreted the law differently than the Board had applied it and could be interpreted to prevent the Board from reconsidering the good cause determination and applying the law correctly. The Board's belief that this Court altered an element of the Board's decision-making

19

process requiring remand of the good cause determination does not overcome this Court's refusal to remand the issue and the supreme court's refusal to consider altering that decision.

Our conclusion that the original good cause determination was not remanded obviates our consideration of whether substantial evidence supports the finding on remand of no good cause for termination. The Board argues that substantial evidence can support opposing factual findings based on the same record. While theoretically correct, that contention is immaterial because the good cause determination was not properly before the Board on remand. We need not review the sufficiency of the evidence supporting the unauthorized revised finding.

We cannot, however, render judgment terminating Metro's dealer agreement and ordering the winding up of the relationship by a date certain as Ford urges. Although courts are empowered to affirm, reverse, or remand agency decisions, we do not find a power in this type of situation to render a decision that the agency should have rendered. *See* Tex. Gov't Code Ann. § 2001.174; *Pantera*, 150 S.W.3d at 474 n.9; *GTE-SW*, 833 S.W.2d at 175; *Consumers Water, Inc. v. Public Util. Comm'n*, 774 S.W.2d 719, 722 (Tex. App.—Austin 1989, no writ); *see also Marrs v. Railroad Comm'n*, 177 S.W.2d 941, 950 (Tex. 1944). Under these circumstances, we cannot render judgment terminating the dealer agreement or dictating the pace of the windup of the relationship.

Instead, we must remand this cause to the Director of the Motor Vehicle Division of the Texas Department of Transportation[7] to conduct the proceedings that should have followed

---

[7] The legislature has given the Board's former responsibilities to the Director of the Motor Vehicle Division of the Texas Department of Transportation. *See* Tex. Occ. Code Ann. § 2301.005(a) (West Supp. 2007).

20

our previous remand. Because this Court by its decision in 2000 affirmed and did not remand the Board's good cause determination for further consideration, we conclude that the Board exceeded its power and committed an error of law by revisiting and reversing that determination. That error affected the substantial rights of Ford and Freightliner by altering the fundamental finding that Ford had good cause to terminate Metro's franchise. *See generally* Tex. Gov't Code Ann. § 2001.174. Accordingly, we reverse the Board's Final Order After Remand signed February 3, 2005, because it adopts Finding of Fact No. 49 and Conclusion of Law No. 5, both of which concern the unauthorized reconsideration and rejection of the affirmed good cause determination. We reverse the entire order because the remaining actions it directs flow from the improperly revised good cause determination. We remand the cause to the Director for further proceedings established by statute and regulation to follow the Board's previously affirmed determination that Ford had good cause to terminate the franchise in question.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Reversed and Remanded

Filed: May 1, 2008

21