**REVERSE in part; AFFIRMED in part; and Opinion Filed November 19, 2020**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-19-01473-CV**

**IN THE ESTATE OF FRANCES ANDERTON BUCHANAN, DECEASED**

**On Appeal from the County Court at Law No. 2**
**Hunt County, Texas**
**Trial Court Cause No. 17188**

## MEMORANDUM OPINION

Before Justices Molberg, Carlyle, and Browning
Opinion by Justice Browning

The underlying facts of this appeal began in 2012 with the guardianship of Frances Anderton Buchanan. The ownership and subsequent disbursement of funds from certain accounts has been embroiled in family controversy ever since with proceedings occurring in the probate court, the district court, and a prior appeal to this Court. *See Anderton v. Green*, 555 S.W.3d 361 (Tex. App.—Dallas 2018, no pet.).

In this appeal, we consider whether the trial court erred by concluding Jennifer Green, Frances's granddaughter, was entitled to disbursement of $206,320.33 from Frances's estate. We also determine whether the trial court erred by awarding

appellate attorneys' fees and setting the supersedeas bond at $206,320.33. We reverse the trial court's award of appellate attorneys' fees. In all other respects, the judgment of the trial court is affirmed.

## Background

Given that this appeal is part of a long, involved series of events and legal proceedings, we endeavor to provide a brief summary of the factual and procedural history that leads to the present appeal.

James Anderton, Frances's son, is the sole trustee of a trust created in 1991 by Frances and her late husband. Jennifer is Frances's granddaughter. Jennifer and Frances enjoyed a close relationship that began in Jennifer's childhood when she moved in with the family. Their closeness continued into adulthood, and Jennifer helped care for Frances during her declining health from cancer treatment.

Frances, an adept and experienced businesswoman, carefully managed her finances and the inheritance for her family through trusts for her sons[1] and several annuities for Jennifer. In addition to being a beneficiary on the annuities, Jennifer was also named as a joint owner of some of Frances's bank accounts and the sole beneficiary on other accounts.

---

[1] Frances's second son, Darrell, is not involved in this appeal.

By 2011, Frances suffered from dementia. Despite some days of appearing fully cognizant and aware of her family and personal affairs, she often believed people, including Jennifer, were stealing from her.

On October 15, 2012, James accompanied Frances to various financial institutions "with the objective of removing Jennifer's name from all of Frances's accounts." *Anderton*, 555 S.W.3d at 367. Frances removed Jennifer from the accounts and changed the beneficiary designations to the trust benefitting James. Shortly thereafter, Jennifer learned of the changes.

James filed an application for guardianship of the person and estate on October 19, 2012. Despite assisting Frances with financial decisions a few days earlier, James claimed Frances could not "manage her bank accounts and investments" and "suffered from 'Chemo-brain' [that] caused her to lose certain brain functions, and the condition is getting worse." He alleged Frances was "easily taken advantage of, and will agree with anything that is suggested to her."

Jennifer likewise filed an application for guardianship arguing that James was disqualified to serve as temporary guardian because he, among other things, coerced Frances to sign certain legal documents benefitting him when she was legally incapacitated.

On November 1, 2012, the trial court denied both applications and appointed Linda and Lloyd Brigance as Frances's temporary co-guardians of her person and Michael Taylor as temporary guardian of her estate. Taylor, pursuant to his

authority, removed funds from various accounts and consolidated them into one guardianship account.

On November 14, 2012, the court signed an Order on Estate Accounts During Temporary Guardianship that stated in relevant part that no one

> [S]hall make, execute, effectuate, or carry out, or attempt to make, execute, effectuate, or carry out, any changes, deletions or additions to the ownership rights, survivorship rights, or beneficiary designations concerning any bank account or any other deposit account or investment account belonging to the Estate including, but not limited to, any changes, deletions or additions to any account or accounts of the Estate requested by the Ward or any other person subject to the jurisdiction of this Court prior to the hearings in this cause on October 23, 2012 and October 26, 2012, or any changes, deletions or additions to any account or accounts requested by the Ward or any other person subject to the jurisdiction of this Court during the term of this Temporary Guardianship.

Frances died unexpectedly on November 26, 2012. On December 13, 2012, James filed an application to probate Frances's will, or alternatively, to issue letters of dependent administration. In the will, James was designated as the trustee of the Jimmie W. Anderton and Frances E. Anderton Revocable Living Trust and a beneficiary under the trust. The revocable trust was the sole beneficiary of the estate of Frances Anderton Buchanan per the terms of Frances's last will and testament.

On December 20, 2012, Jennifer filed her plea in intervention objecting to the appointment of James as successor independent executor and asserting a justiciable interest in the litigation because Taylor, as guardian of the estate, was holding assets rightfully belonging to her.

–4–

On January 3, 2013, the trial court appointed Taylor as administrator of the estate, and he filed his oath to perform all duties as administrator of Frances's estate.

On January 23, 2013, the Honorable Andrew Bench, judge of county court at law number 1 signed an order transferring the proceedings to county court at law number 2 because "through recent developments, it has become apparent that the Honorable Andrew Bench, who happens to be judge of the Hunt County Court at Law #1, is potentially a witness as to a fact matter in the above referenced proceeding."

Immediately thereafter, James filed an application for temporary restraining order and temporary injunction claiming Jennifer had improperly obtained proceeds from certain annuities held by Frances and the revocable trust. James claimed Jennifer had spent portions of the proceeds; therefore, it was necessary that she be restrained from spending, disbursing, or secreting any further proceeds from certain funds to avoid immediate and irreparable injury. Jennifer answered and filed numerous counterclaims against James individually and as trustee.

On April 14, 2014, James filed an application for partition and distribution of the estate. He sought distribution of the estate assets to the revocable trust. On April 21, 2014, Jennifer filed her objection to the application for partition and distribution of the estate. The court denied the application on July 23, 2014.

James subsequently sued Jennifer in the 354th district court and sought "to claim monies that are yet to be received from accounts belonging to Frances E.

Anderton" and requested, in part, declaratory judgment that "James Anderton, as Trustee of the Anderton Trust, the intended beneficiary of the annuity account benefits, bank accounts, and the house seeks to have the Court determine the rights of the parties to such assets including the Alliance Annuity Accounts, the bank accounts and the house."

Jennifer counterclaimed seeking declaratory judgment that "(i) the Alliance Accounts, Chase Accounts, ANB Accounts, and New ANB Account legally belong to her, and (ii) the October 16, 2012 Power of Attorney is invalid, as well as any transactions or actions related thereto or entered thereunder."

On July 21, 2016, the case proceeded to trial in the 354th district court to consider the causes of action related to ownership of certain financial assets and whether Frances had the mental capacity to change the beneficiaries on certain accounts in October 2012. The court heard fifteen witnesses over seven days. *Anderton*, 555 S.W.3d at 370.

After the bench trial, Judge Beacom signed a final judgment on October 20, 2016, in favor of Jennifer stating, in relevant part,

> Frances lost her mental capacity to manage all aspects of her property sometime prior to October 15, 2012 . . . [which] continued uninterrupted until her death on November 26, 2012.

> All actions taken by [Frances] on or after October 15, 2012, at any financial institution or attorney's office, lacked legal effect and were and are invalid, null and void.

. . .

–6–

> IT IS FURTHER ORDERED, ADJUDGED, DECLARED, AND DECREED that [Jennifer] has a superior claim to [James] and the Trust to all accounts that were held in the banks on October 15, 2012– that is, the Alliance Accounts, the Chase Accounts, and the ANB Accounts.

The final judgment also awarded Jennifer attorneys' fees.

Subsequently, James filed an appeal to this Court. *See Anderton*, 555 S.W.3d at 361. In two issues, James challenged the trial court's finding that Frances lacked capacity to manage all aspects of her property prior to October 15, 2012 (continuing until her death) and awarding Jennifer attorneys' fees against both James individually and as trustee. *Id*. at 370. We concluded the evidence was sufficient to support the trial court's findings, conclusions, and declarations regarding Frances's mental capacity and that her actions on or after October 15, 2012 at any financial institution or attorney's office, lacked any legal effect and were invalid, null, and void. *Id*. at 371–72. We reversed and remanded to the trial court the portion of the judgment awarding Jennifer attorneys' fees. *Id*. at 375. "In all other respects, we affirm[ed] the trial court's judgment." *Id*.

After we issued our opinion, the fight continued in county court at law number 2 when Jennifer filed a request for disbursement of funds held by Taylor as a result of the guardianship. She claimed entitlement to funds from two American National Bank accounts and a Chase Bank account based on assets tracing, Judge Beacom's judgment declaring her superior claim to the accounts, and our opinion affirming that judgment.

James filed his response in opposition to Jennifer's request for disbursement of funds shortly thereafter. He relied on the guardianship order appointing Taylor as guardian and giving Taylor "the power to take possession and to manage the personal property, including bank accounts, annuities, and other deposits or investment accounts of [Frances]." James asserted Taylor had full authority to consolidate the funds into a guardianship account, which he did on November 1, 2012, while Frances was still alive.

James argued that Jennifer made no objection regarding the consolidation of these funds during the guardianship, she fully participated in the guardianship and probate proceedings, and she made no objection to the order approving final account of temporary guardian or any of the annual accounts filed and approved with the trial court. Instead, James claimed that she waited almost seven years after the guardianship proceeding to assert that the accounts were inappropriately consolidated and that she owned the funds based on the judgment from the 354th district court.

He contended that the final judgment only declared that Jennifer had superior rights to funds on October 15, 2012; not that she is presently entitled to the funds (which had been converted from the guardianship to the estate). He asserted Taylor acted within his authority as temporary guardian in consolidating accounts and such acts could not be undone because Jennifer's claims were barred by res judicata, collateral estoppel, and waiver, among other things.

Jennifer filed her response arguing in part, that "[i]f [James] truly believed that the ownership rights of the bank accounts at issue already had been determined in the probate proceedings, there would have been no reason for him to include the litany of contentions about the bank accounts in his lawsuit against Green" in the 354th district court.

The trial court signed the order regarding Jennifer's request for disbursement of funds held by Taylor on October 8, 2019. Pursuant to the declarations in the final judgment from the 354th district court, the court ordered Taylor to pay Jennifer $206,320.33. It overruled all of James's objections and denied all the claims that he asserted.

The trial court signed an order on October 15, 2019 approving the account for final settlement again recognizing Jennifer's right to $206,320.33 and stating that James had thirty days to appeal the order and pay a bond amount of $531,038.00. If he failed to appeal and post the bond, Taylor was authorized to distribute the funds to Jennifer.

Subsequently, James filed a motion to reconsider, modify, or clarify the order approving the account for final settlement and awarding appellate attorneys' fees. He asked the court to reconsider the bond amount and the awarded attorneys' fees because both were excessive. He further contended that Jennifer had no pleading on file that entitled her to recover attorneys' fees. Jennifer filed leave to amend her pleading to include a request for attorneys' fees under the Declaratory Judgment Act.

On November 20, 2019, the court reduced the supersedeas bond from $531,038.00 to $206,320.33 and granted Jennifer's motion to amend pleading but with certain stipulations regarding any appeal of appellate attorneys' fees.

This appeal followed.

## Disbursement of Funds from the Estate

James argues in his first issue that the trial court erred by disbursing $206,320.33 in funds from the estate to Jennifer. James does not contest Jennifer's superior right to the funds prior to Taylor's consolidation of the funds into the guardianship account; rather, he argues Jennifer's "superior right to such money extinguished on November 1, 2012, when Taylor closed those accounts while Frances was still alive." To reach his conclusion, James argues the judgment from the 354th district court did nothing more than find that Jennifer had superior rights to the funds in the original accounts during a finite timeframe—from October 15, 2012 until November 1, 2012.

James contends that res judicata and collateral estoppel prohibited the trial court from distributing the funds to Jennifer because the guardianship proceeding resulted in a final order that fully adjudicated the matter. By not challenging the guardianship proceedings and subsequent order, he argues that Jennifer is barred from relitigating who has superior rights to the funds. Conversely, Jennifer argues that James waived any argument regarding disbursement of funds when he failed to

appeal the findings in the 354th district court's judgment in the first appeal to this Court. Accordingly, she claims James's appeal is moot. We agree with Jennifer.

Neither party provides case law supporting the standard of review for the issue presented. However, because resolution of the issue involves consideration of multiple trial court orders and judgments, we must construe the relevant documents under the same rules of interpretation as those applied to other written instruments. *See Aubrey v. Aubrey*, 523 S.W.3d 299, 316 (Tex. App.—Dallas 2017, no pet.). If an order or judgment is unambiguous, we must construe them in light of the literal meaning of the language used. *Id.* In addition, when the judgment or order on its face is plain and unambiguous, extrinsic matters may not be considered to give the decree a different effect from that expressed by the literal meaning of the words used. *Id.* (citing *McLeod v. McLeod*, 723 S.W.2d 777, 779 (Tex. App.—Dallas 1987, no writ)). On the other hand, if the judgment is ambiguous, the entire context of the judgment and the record should be considered. *Freightliner Corp. v. Motor Vehicle Bd. of Tex. Dep't of Transp.*, 255 S.W.3d 356, 363 (Tex. App.—Austin 2008, pet. denied). Further, we will not read an order in a manner that renders any of its words meaningless or which leads to absurd results. *See Crosstex Energy Serv., L.P. v. ProPlus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014); *Kourosh Hemyari v. Stevens*, 355 S.W.3d 623, 627 (Tex. 2011). If the language in the judgment is susceptible to more than one interpretation, the one that renders the judgment more reasonable, effective,

and conclusive, and that harmonizes it with the facts and the law of the case, should be adopted. *Freightliner Corp.*, 255 S.W.3d at 363.

To decide James's first issue, we must harmonize several orders from the guardianship proceeding, the probate proceeding, the 354th district court proceeding, and the prior appeal. To begin, the final judgment subject to this appeal granted Jennifer's request for disbursement of funds and specifically relied on Judge Bench's November 14, 2012 order concerning estate accounts during temporary guardianship and the declarations pursuant to the 354th district court's final judgment. We consider each in turn.

The November 14, 2012 order concerning estate accounts during temporary guardianship stated, in relevant part, that neither Taylor nor any other person "shall" make or attempt to make any changes, deletions, or additions to the ownership rights, survivorship rights, or beneficiary designations concerning any of Frances's accounts prior to the October 23, 2012 and October 26, 2012 hearings. It further stated no one subject to the jurisdiction of the court could make such changes during the term of the temporary guardianship. By broadly ordering that no one could change the ownership rights, survivorship rights, or beneficiary designations on Frances's accounts prior to or during the guardianship proceeding, the accounts returned to their pre-guardianship status with Jennifer having rights to the accounts.

James does not dispute this. Rather, he claims Jennifer's right to the accounts extinguished when Taylor, pursuant to his powers as temporary guardian of the

–12–

person and estate, transferred the accounts into the guardianship account on November 1, 2012 while Frances was still alive.

James claims that it is clear from the language of the November 14 order that the court (1) knew Taylor had already consolidated the accounts, (2) did not order Taylor to restore any of the consolidated funds to Frances's prior accounts, and (3) meant to prohibit any party (including Taylor) from changing ownership rights, survivorship rights, or beneficiary designations of the guardianship account because this was the only account Frances owned at the time. Therefore, he argues the order was not directed to Frances's previous accounts, as they had already been closed.

The language of the order belies his argument. The order says nothing about the guardianship account but instead references any "bank account," "deposit account," "investment account," and a broad reference "to any account or accounts requested by the Ward or any other person subject to the jurisdiction of this Court during the term of this Temporary Guardianship." Thus, the unambiguous, plain language of the order does not support James's interpretation. Had the trial court intended to prohibit changes to only the guardianship account, the order could have been so narrowly tailored. Rather, given the broad language coupled with the specific prohibition against any person subject to the jurisdiction of the court, including Frances, making changes during the term of the temporary guardianship, the court indicated the referenced accounts were those in existence prior to any transfer of funds into the guardianship account.

–13–

To the extent James argues the November 14 order was merely a temporary order superseded by the February 12, 2013 order approving final account of temporary guardian, we are unpersuaded and our conclusion remains the same.

Taylor's final account of temporary guardian filed with the court explained that "the Temporary Guardian is ready to deliver the property still remaining on hand to the person the Court finds to be legally entitled to possession of such property." The order approving final account stated that "the Temporary Guardian is the sole recipient of funds and property as set forth in Exhibit C of the Final Account, and the property remaining on hand should be delivered to the person entitled to have possession of such property." It then provided

> IT IS THEREFORE ORDERED that said Final Account of Temporary Guardian is hereby approved; that the Temporary Guardian shall deliver forthwith all the property belonging to the Estate and still remaining on hand to Michael E. Taylor, Administrator of the Estate of Frances Anderton Buchanan.

The court ordered Taylor (as temporary guardian) to deliver property belonging to the estate to himself as administrator of the estate, but did not define what property belonged to the estate. Despite James's argument to the contrary, the closing of the temporary guardianship did not extinguish Jennifer's rights and change the funds into estate property. Nothing in the language of the order changed or modified the status of Jennifer's rights to the accounts as determined by the court in its November 14 order.

By subsequently suing Jennifer in the 354th district court and seeking a declaratory judgment, James continued to believe that a court had not determined who possessed superior rights to the funds. After a seven-day bench trial, the 354th district court's final judgment put the issue to rest. The judgment, among other things, unambiguously "ORDERED, ADJUDGED, DECLARED, AND DECREED that Green has a superior claim to Anderton and the Trust to all accounts that were held in the banks on October 15, 2012 – that is, the Alliance Accounts, the Chase Accounts, and the ANB Accounts."

James appealed that judgment, but only challenged the court's findings regarding Frances's mental capacity and the award of attorneys' fees. *Anderton*, 555 S.W.3d at 370. He did not challenge the finding that Jennifer has a superior right to the funds.

A reviewing court does not again pass upon any matter presented to, directly passed upon, or in effect disposed of by an earlier appeal to that court. *See, e.g., Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 149 (Tex. App.— Dallas 2011, no pet.). An appellate court's judgment is final not only in reference to the matters actually litigated, but as to all other matters the parties might have litigated and decided in the case. *Id*. (noting public policy aimed at avoiding piecemeal litigation and instead ending it). Thus, if James believed the trial court erred by declaring Jennifer has the superior right to the funds, he needed to raise the issue in that appeal.

In reaching this conclusion, we reject James's contention that he had no reason to appeal that finding because the trial court determined Jennifer had a superior right to the funds only on October 15, 2012 and not the present day. The judgment states she "has" a superior right to the funds, not that she "had" a superior right, which could indicate her right extinguished by some later action. But the plain language of the judgment indicates otherwise.

Throughout his brief, James repeatedly relies on various orders to argue there is no final judgment determining who has a present day right to the funds. James loses sight of the procedural posture through which this appeal reached our Court a second time. James is appealing the trial court's judgment awarding disbursement of funds to Jennifer after she filed a request for disbursement of funds based on the judgment from the 354th district—a judgment we affirmed.

Significantly, had James believed that the ownership of funds had been decided in earlier proceedings, he would not have sued Jennifer in the 354th district court seeking "to claim monies that are yet to be received from accounts belonging to Frances E. Anderton" and requesting a declaratory judgment regarding "the rights of the parties to such assets, including the Alliance Annuity Accounts, the bank accounts and the house."

The record likewise indicates Taylor did not believe ownership of the funds had been determined. During the bench trial in the 354th district court, Taylor

testified that he still had the funds because "I don't know who to tender them to . . . I would hope the Court would tell me where to tender them to."

At the conclusion of the bench trial, the 354th district court recognized its inability to order disbursement of the funds despite finding that Jennifer had a superior right to the bank accounts on October 15, 2012. In an October 12, 2015 letter, the court noted, "I would think with that finding, a motion could be filed with the probate court claiming probate assets." This is exactly what Jennifer did by filing her request for disbursement of funds after we affirmed the 354th district court's judgment.

Accordingly, we agree with Jennifer that James's attempt to challenge her superior right to the funds is waived because he failed to challenge it in the first appeal. *See Cessna Aircraft Co.*, 345 S.W.3d at 149. In reaching this conclusion, we reject James's invitation to go back in time and consider the multitude of orders stemming from the years of litigation regarding these funds. Instead, we have harmonized the unambiguous language of the November 14, 2012 order and the 354th district court's final judgment, both of which the trial court relied on in reaching its final judgment subject to this appeal, as they relate to the prior appeal.

We overrule James's first issue.

### Appellate Attorneys' Fees

In his second issue, James argues that the trial court erred by awarding Jennifer appellate attorneys' fees because there is no contract or statute authorizing

–17–

the recovery of such fees, and she presented no evidence that the award was reasonable, necessary, equitable, or just. Jennifer responds that James stipulated and limited his appellate arguments regarding attorney's fees; therefore, he cannot challenge the award or the reasonableness of the fees. She further asserts she is entitled to recover her fees under the Declaratory Judgment Act (the Act) because the present lawsuit was a continuation of her declaratory judgment action from the 354th district court. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a).

We begin by rejecting James's challenge to the reasonableness of the attorneys' fees award. In the final judgment, the parties stipulated to limiting appellate issues regarding attorneys' fees to the following: "(1) [Jennifer] failed to include a request for attorneys' fees in her [request for disbursement of funds]; and (2) there is no statute or contract authorizing the recovery of attorneys' fees under the facts and issues presented to the probate court."

In his reply brief, James concedes he stipulated to the amount of fees. *See Union Pac. R.R., Co. v. Ameriton Props. Inc.*, 448 S.W.3d 671, 676 n.1 (Tex. App.— Houston [1st Dist.] 2014, pet. denied) ("Stipulations conclusively resolve the facts stipulated and all matters necessarily included therein and bind the court."). However, James did not stipulate to Jennifer's right to receive attorneys' fees, as the

judgment specifically provided that he could challenge on appeal whether any statute or contract authorized the recovery of her fees under these facts.[2]

Texas prohibits the recovery of attorneys' fees unless they are permitted by statute or contract. *LG Ins. Mgmt. Servs. v. Leick*, 378 S.W.3d 632, 640 (Tex. App.—Dallas 2012, pet. denied). Jennifer argues the trial court properly awarded fees pursuant to the Act; however, Jennifer's motion in the probate court seeking disbursement of funds was not a declaratory action. While she referenced the declarations from the 354th district court judgment in support of her motion to disperse funds, mere references did not transform her motion into one seeking a declaratory judgment from the probate court. Instead, she was seeking an order to receive the funds that a separate court, in a separate proceeding, had already determined. She has provided no authority, and we have found none, that a party who obtains a declaratory judgment in one court can later piggy-back that judgment to a completely separate proceeding, in a completely different court, before a different judge and receive attorneys' fees under the Act. Accordingly, we conclude the trial court could not rely on the Act to award appellate attorneys' fees.

The record does not indicate Jennifer is entitled to fees under any other statute. In fact, she emphasized during the November 12, 2019 motions hearing that, "We're not asking for Chapter 38. That's contracts and services rendered, et cetera. I don't

---

[2] Jennifer's original request for disbursement of funds did not request attorney's fees. Only after the fact did she amend her pleadings adding her request for fees pursuant to the Act.

–19–

even raise that. What we're raising is Chapter 37 of the Civil Practice and Remedies Code, which is the declaratory judgment action, which is what Judge Beacom relied on." Based on this concession, we reject Jennifer's argument in which she seems to indicate that because her motion included the tracing of funds tied to the signature cards of bank accounts, she can recover under contract. While a signature card for a bank account is a type of contract, she negated her reliance on a contractual theory during the hearing. *See Whitney Nat'l Bank v. Baker*, 122 S.W.3d 204, 208 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Thus, she never made the argument to the trial court, and we shall not consider it. *See* TEX. R. APP. P. 33.1.

We agree with James that the trial court abused its discretion by awarding appellate attorneys' fees. We sustain his second issue and reverse the trial court's award of $30,000 for an unsuccessful appeal by James to the court of appeals and $17,000 to the supreme court.

## Supersedeas Bond

In his third issue, James argues that the trial court erred by setting the supersedeas bond at $203,320.33 because it is excessive and bears no relation to maintaining the assets. Jennifer responds that by failing to post a supersedeas or file an emergency motion in this Court, his appeal is moot because Taylor disbursed the funds to her.

We begin by addressing whether the appeal is moot. As the Supreme Court of Texas has explained, an appeal must be dismissed as moot "when a judgment

–20–

debtor voluntarily pays and satisfies a judgment rendered against him." *Highland Church of Christ v. Powell*, 640 S.W.2d 235, 236 (Tex. 1982). In other words, a party cannot freely decide to pay a judgment and later change his mind and seek an appellate court's help in recovering the payment. *Id*. This rule is designed to prevent appellants from misleading their opponents into believing a controversy is over when it is not. *Id*. At the same time, however, "[t]he Texas rule is not, and never has been, simply that any payment toward satisfying a judgment, including a voluntary one, moots the controversy and waives the right to appeal that judgment." *Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2002). Instead, "payment on a judgment will not moot an appeal of that judgment if the judgment debtor clearly expresses an intent that he intends to exercise his right of appeal and appellate relief is not futile." *Id*. at 212; *see also Kamel v. AdvoCare Int'l, L.P*., No. 05-16-00433-CV, 2017 WL 1149669, at *3 (Tex. App.—Dallas Mar. 28, 2017, no pet.) (mem. op.).

In this case, we cannot conclude Jennifer was misled into believing the controversy concerning the funds was over when Taylor disbursed them. James believed the trial court erred by awarding Jennifer the funds, and he intended to continue challenging the award. He filed a motion to reconsider, modify, or clarify the order approving the account for final settlement, and his notice of appeal stated that he desired to appeal the order setting bond at $206,320.33. Thus, the disbursement of funds did not moot this appeal because James "clearly express[ed] an intent that he intend[ed] to exercise his right of appeal and appellate relief is not

–21–

futile." *Id*. at 212. We decline Jennifer's request to dismiss the appeal and consider James's supersedeas argument.

Texas Rule of Appellate Procedure 24 addresses suspension of enforcement of a judgment pending appeal in civil cases. TEX. R. APP. P. 24; *see also Abdullatif v. Choudhri*, 536 S.W.3d 48, 51 (Tex. App.—Houston [14th Dist.] 2017, no pet.). On the motion of a party, an appellate court may review the sufficiency or excessiveness of the amount of security. *See* TEX. R. APP. P. 24.4(a); *see also Tex. Custom Pools, Inc. v. Clayton*, 293 S.W.3d 299, 305 (Tex. App.—El Paso 2009, no pet.). Under rule 24.4, an appellate court may review (1) the sufficiency or excessiveness of the amount of security, (2) the sureties on the bond, (3) the type of security, (4) the determination whether to permit suspension of enforcement, and (5) the trial court's exercise of discretion under rule 24.3(a) regarding continuing trial court jurisdiction. TEX. R. APP. P. 24.4(a).

A party may challenge a trial court's supersedeas order by filing a proper motion pursuant to rule 24.4. *See, e.g., Holt v. McQueen*, No. 14-09-00307-CV, 2009 WL 1325949, at *1 (Tex. App.—Houston [14th Dist.] May 14, 2009, no pet.) (mem. op.) (concluding any challenge to a supersedeas order should be considered as part of an appeal from a final judgment "[u]pon filing a proper motion pursuant to Texas Rule of Appellate Procedure 24.4"); *LMC Complete Auto., Inc. v. Burke*, 229 S.W.3d 469, 488 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) (concluding proper remedy was to challenge bond by seeking relief pursuant to rule

24.4(a)).  James did not file a rule 24.4 motion with this Court seeking review of the "excessive" amount of the supersedeas bond; therefore, he failed to properly and timely challenge the order.  *See* TEX. R. APP. P. 24.4(a), (d) (noting that when a party files a motion, it "must be heard at the earliest practicable time").  Accordingly, we overrule his third issue.

## Conclusion

We reverse the trial court's award of $30,000 for an unsuccessful appeal by James to the court of appeals and $17,000 to the supreme court.  In all other respects, the judgment is affirmed.

/John G. Browning/
JOHN G. BROWNING
JUSTICE

191473F.P05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE ESTATE OF FRANCES ANDERTON BUCHANAN, DECEASED

No. 05-19-01473-CV

On Appeal from the County Court at Law No. 2, Hunt County, Texas Trial Court Cause No. 17188. Opinion delivered by Justice Browning. Justices Molberg and Carlyle participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part.

We **REVERSE** that portion of the trial court's judgment awarding "$30,000.00 as reasonable and necessary attorneys' fees, if Anderton (whether individually and/or as Trustee of the Trust) files an appeal with the Court of Appeals that is ultimately unsuccessful, and Green can recover the $30,000.00 from James Anderton, in his individual capacity and as Trustee of the Jimmie W. Anderton and Frances E. Anderton Revocable Living Trust, jointly and severally" and "$17,000.00 as reasonable and necessary attorneys' fees, if Anderton (whether individually and/or as Trustee of the Trust) files an appeal with the Supreme Court of Texas that is ultimately unsuccessful, and Green can recover the $17,000.00 from James Anderton, in his individual capacity and as Trustee of the Jimmie W. Anderton and Frances E. Anderton Revocable Living Trust, jointly and severally."

In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear their own costs of this appeal.

Judgment entered November 19, 2020