Steven B. AUBREY, Appellant

v.

Betsy S. AUBREY, Trustee of the Aubrey Family Trust Created Under the Will of Richard Buck Aubrey, Deceased, Appellee

No. 05-16-00506-CV

Court of Appeals of Texas, Dallas.

Opinion Filed June 7, 2017

Steven B. Aubrey, Dallas, TX, pro se.

Ira E. Tobolowsky, Tobolowsky Siegel & Burk, P.C., Michael Tobolowsky, Tobolowsky P.C., Dallas, TX, for Appellee.

Before Justices Lang, Myers, and Stoddart

## OPINION

Opinion by Justice Lang

Appellant Steven B. Aubrey,[1] proceeding pro se, filed the underlying lawsuit seeking to remove appellee Betsy S. Aubrey, Trustee of the Aubrey Family Trust Created Under the Will of Richard Buck Aubrey, Deceased, ("Betsy") as trustee of the Aubrey Family Trust ("the Trust"). The trial court signed a judgment declaring appellant a vexatious litigant, dismissing the lawsuit with prejudice, and granting Betsy sanctions against appellant.

On appeal, we construe appellant's issues to assert that the trial court erred by (1) granting Betsy's motion to declare him a vexatious litigant and (2) awarding the sanctions described above.[2] We decide in

---

1. In the captions of his notice of appeal and appellate brief, appellant describes himself as "Steven B. Aubrey, Beneficiary of the Aubrey Family Trust Created Under the Will of Richard Buck Aubrey, Deceased." However, the trial court's judgment in question is against "Steven B. Aubrey."

2. Appellant's pro se brief in this Court contains a single paragraph titled "Issues Pre-

favor of appellant on a portion of his second issue and against appellant on his first issue and the remaining portion of his second issue. We affirm the trial court's judgment, in part; reverse the judgment, in part; and remand this case for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL CONTEXT

Upon the death of Richard Buck Aubrey in 2004, his will ("the Will") provided for creation of the Trust and appointed his spouse, Betsy, as the trustee.[3] Additionally, the Will stated that at the time of signing, Richard Buck Aubrey had the following children: Richard B. Aubrey Jr. ("Junior"), Thomas Alan Aubrey, and appellant.

Appellant filed the underlying lawsuit on September 23, 2015, seeking to remove Betsy as trustee of the Trust based on breach of fiduciary duty and "self-dealing." In his petition, appellant stated in part (1) "[Betsy] is the current income beneficiary of the Trust"; (2) "[a]ll of the net income from the Trust must be annually distributed to [Betsy]"; (3) "[Betsy] may utilize any part of the Trust principal assets if needed for her health, support or maintenance"; and (4) "[t]he 3 sons are <u>vested remainderman</u> [sic] because the Trust properties will vest in them when [Betsy] dies and be divided equally, with no further conditions (also properly referred to as <u>future interest beneficiaries</u> whose remainder becomes

possessory upon [Betsy's] death)" (emphasis original). Further, appellant contended (1) with the help of accountant David Hendricks and attorney Ira Tobolowsky, Junior has "tricked" Betsy into signing deeds for "sham" transactions that "unlawfully stripped" assets from the Trust; (2) in approximately 2007, Junior "tricked [Betsy] into signing a deed that unlawfully stripped the first asset (valued at $2.5 million) from the Trust into his empty shell [corporation], giving nothing in return"; (3) "[a]gainst the terms of the Trust, all of the net income flows to Junior, not to [Betsy]"; (4) "[e]vidence that [Betsy] is damaging herself, the Trust and its beneficiaries is profound throughout [her] December 8, 2014 deposition" taken in a previous case filed against her by appellant that resulted in a dismissal; (5) Betsy is "frail and confused" and her deposition testimony described above "indicates her complete inability to direct, manage or oversee this Trust (or any trust)"; (6) "[Betsy's] unlawful deed transfers prove she repeatedly breached her duty"; (7) "Trustee has not shown good faith in administering the trust and performing the duties imposed on her by common law pursuant to Prop. Code § 113.051," *see* Tex. Prop. Code Ann. § 113.051 (West 2014); (8) "[Trustee] has breached her fiduciary duty, she has been caught self-dealing and she is willfully ignoring the law and must be removed from the Trust

---

sented," in which appellant makes assertions pertaining to multiple errors by the trial court.

**3.** Specifically, the Will stated in part,

(1) Income and Principal. The Trustee shall distribute to my spouse at least annually all of the net income of the Family Trust and may distribute any part of the principal to or for my spouse in order to provide for my Spouse's health, support and maintenance.

. . . .

(3) Termination of Family Trust. The Family Trust shall continue throughout the life of my Spouse. Upon the death of my Spouse, all of the principal and undistributed income then remaining in the Family Trust shall be distributed to my then living descendants, per stirpes; and the Family Trust shall terminate.

for her violations of Prop. Code § 113.082(a)(1)(2)(3) and (b)," *see id.* § 113.082; and (9) "[t]he pattern of secreting properties has been ongoing." Specifically, appellant stated in part,

On June 27, 2013, Junior, Tobolowsky, and Hendricks conspired to fraudulently transfer a Trust asset in Travis County out of the Trust. The scam included three sham transactions on one day:

a) Betsy Aubrey, Trustee transferred the property to Betsy Aubrey, Individually; (without consideration)

b) Betsy Aubrey, Individually transferred the property to her son Junior (without consideration); and

c) Junior sold the property for $300,000 to United Heritage Credit Union.

The first two transfers are rendered void by law because no consideration was given to the Trust or to Mrs. Aubrey, Individually in return for the real property. Junior used a fraudulent address on his third deed transfer, put $300,000 in his pocket, and left the Trust with nothing at all. Transferring property without consideration directly violates the terms of the Trust and violates TEXAS PROPERTY CODE § 113.010. The beneficiaries of the Trust are the owners of the Trust assets, not the Trustee. Because Mrs. Aubrey is not the owner of the Trust assets, Texas law prevents "gifting" assets that do not belong to her.

(emphasis original).

Betsy filed a general denial answer. Additionally, on December 18, 2015, Betsy filed a combined "Motion to Determine Vexatious Litigant and Motion for Sanctions." Therein, Betsy stated in part that "[i]n the last seven years, Plaintiff has commenced, prosecuted or maintained more than five litigations (other than in small claims court) that have been deter-mined adversely to Plaintiff (or have been dismissed by Plaintiff)," including, in part, (1) "Cause No. C-1-PB-14-000668, styled, Steven B. Aubrey v. Betsy Stirratt Aubrey, filed in Probate Court No. 1 of Travis County, Texas"; (2) "Cause No. 05-14-01172-CV, styled, In Re: Steven B. Aubrey, Realtor v. the Honorable Michael Miller, filed in the 5th Court of Appeals, Texas"; (3) "Cause No. 15-CV-1792, styled, Steven B. Aubrey v. the Honorable Ingrid Michelle Warren, filed in the United States District Court, Northern District of Texas"; (4) "Cause No. D-1-GN-13-003586, styled, Steven Aubrey v. Susan Stieg, filed in the 200th District Court of Travis County, Texas"; and (5) "D-1-GN-08-003721, styled, Brian Vodicka v. Southern Methodist University, et al., filed in the 250th District Court of Travis County, Texas." Also, Betsy asserted (1) "there is not a reasonable probability that Plaintiff will prevail in the current litigation" because he "lacks standing to bring this lawsuit"; (2) pursuant to Chapter 10 of the Texas Civil Practice and Remedies Code, *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001–.006 (West 2002), she was requesting a monetary sanction against appellant in the amount of her reasonable and necessary attorney's fees and expenses she necessarily incurred in this case and six others previously filed against her by appellant, as well as "for prosecuting this Motion"; and (3) a sanction in the amount of $350,000.00 is "just and reasonable" because "Plaintiff's frivolous tactics and allegations have forced Betsy Aubrey and the Aubrey Family Trust to defend Defendant Betsy Aubrey in the prior lawsuits."

Further, in a February 5, 2016 supplemental motion to her combined motions, Betsy asserted several additional "grounds for contending that there is no reasonable probability that Plaintiff will prevail in the current lawsuit." Specifically, Betsy stated

in part (1) she "has committed no wrongs that give rise to her removal as Trustee of the Aubrey Family Trust, a Trust for which she is the sole beneficiary," and (2) appellant "seeks improper relief."

Appendices to Betsy's motions contained, among other things, (1) a copy of the Will; (2) copies of pleadings and court orders pertaining to the filing and disposition of thirteen litigations described in Betsy's motions, including the five litigations described above; (3) emails between appellant and Betsy showing a contentious relationship between them, including a December 2012 email from Betsy informing appellant she has "excluded" him "from any inheritance" and a response by appellant to Betsy several hours later stating in part; "You have 3 days to change your mind and apologize.... Or else I will make it my mission to make the rest of your life miserable, as you deserve"; and (4) signed "declarations" by Tobolowsky and Hendricks respecting facts supporting Betsy's assertions in her motions.[4] Specifi-

4. In one of his declarations, Tobolowsky described the thirteen litigations relied upon by Betsy in her motions as follows:

CASE NO. 1:

Case No. 1 is a lawsuit filed on April 13, 2014 in Probate Court No. 1 of Travis County, Texas, by Steven B. Aubrey, pro se, against his mother, Betsy S. Aubrey, to have Betsy Stirratt Aubrey removed as the Independent Executrix of her late husband's estate. This lawsuit bears Cause No. 1-PB-14-000668. Case No. 1 was dismissed by the Judge of Probate Court No. 1 on April 14, 2014 for want of jurisdiction....

CASE NO. 2:

Case No. 2 is a lawsuit filed on April 30, 2014, in Probate Court No. 3 of Dallas County, Texas, by Steven B. Aubrey, pro se, against his mother, Betsy S. Aubrey, to have Betsy Stirratt Aubrey removed as the Executrix of her late husband's estate. This lawsuit bears Cause No. PR-14-01486. In Case No. 2, Steven Aubrey filed approximately 35 different motions before filing a nonsuit dismissing his lawsuit on April 28, 2015....

CASE NO. 3:

Case No. 3 is a lawsuit filed on September 12, 2014 in the 53rd District Court of Travis County, Texas, by Steven Aubrey, pro se, against his mother, Betsy Aubrey, to have Betsy Stirratt Aubrey declared a vexatious litigant. This lawsuit bears Cause No. D-1-GN-14-003638. When Betsy S. Aubrey was served with citation and Petition in this lawsuit, counsel for Betsy Aubrey made demand on Steven B. Aubrey to dismiss his frivolous lawsuit or Betsy Stirratt Aubrey would file a Rule 91A Motion to Dismiss. As a result of such demand, Steven B. Aubrey filed an Amended Petition dismissing his lawsuit for vexatious litigation....

CASE NO. 4:

Case No. 4 is a lawsuit commenced on November 20, 2014 when Steven B. Aubrey, pro se, filed his Second Amended Petition in the 53rd District Court of Travis County, Texas, against his mother, Betsy Aubrey, and his older brother, Richard B. Aubrey, Jr. This lawsuit bears Cause No. D-1-GN 14-003638. In Case No. 4, Steven B. Aubrey, pro se, sued his mother and older brother for causes of action for malicious prosecution, abuse of process, conspiracy to commit fraud of a beneficiary, negligence, breach of fiduciary duty, participation in breach of fiduciary duty, defamation, and intentional infliction of emotional distress. This lawsuit was eventually transferred to Dallas County, Texas, and consolidated into Case No. 2, above. On April 28, 2015, Steven B. Aubrey voluntarily nonsuited Case No. 4....

CASE NO. 5:

Case No. 5 is a lawsuit filed on May 1, 2015 in the 53rd District Court of Travis County, Texas, by Steven Aubrey, pro se, against United Heritage Credit Union for fraud, civil conspiracy, gross negligence, negligence, and negligence pro se, fraudulent transfer and unjust enrichment. This lawsuit bears Cause No. D-1-GN-15-001718. In Case No. 5, Steven B. Aubrey, pro se, filed on July 21, 2015, his Sixth Amended Petition for Recovery of Real Property, added his mother, Betsy Stirratt Aubrey, the Aubrey Family Trust, and his two brothers as Defendants.... On September 3, 2015, Steven B. Aubrey, pro se, filed a Notice of Nonsuit without Prejudice dismissing Case No. 5....

CASE NO. 6:

Case No. 6 is a lawsuit filed on September 8, 2015 in the 353rd District Court of Travis County, Texas, by Steven Aubrey, pro se, against United Heritage Credit Union, Betsy S. Aubrey, et al. This lawsuit bears Cause No. D-1-GN-15-003836. Steven B. Aubrey, pro se, filed on October 19, 2015, his First Amended Petition for Recovery of Real Property seeking actual and exemplary damages for fraud, gross negligence, fraudulent transfer, and unjust enrichment/quantum meruit. On January 8, 2016, the Travis County Judge presiding over this lawsuit dismissed United Heritage Credit Union and its president on the grounds that Steven B. Aubrey lacked standing to sue the Credit Union and its president. The Travis County Judge took under advisement (and did not decide at that time) whether Steven B. Aubrey had standing to sue Betsy Aubrey and Richard Buck Aubrey, Jr. Case No. 6 is currently pending in Travis County, Texas subject to the Defendants' Motion to Transfer....

### CASE NO. 7:

Case No. 7 is a lawsuit filed on September 23, 2015 in the 14th District Court of Dallas County, Texas, by Steven Aubrey, pro se, against his mother, Betsy S. Aubrey, to have her removed as Trustee of the Aubrey Family Trust. This lawsuit bears Cause No. DC-15-11685. In Case No. 7, Defendant Betsy Aubrey has filed the instant Motion to Declare Steven B. Aubrey a Vexatious Litigant....

### CASE NO. 8:

Case No. 8 is a lawsuit that was originally part of Case No. 2 (Case No. PR-14-01486 filed in Probate Court No. 3 of Dallas County, Texas), by Steven B. Aubrey, pro se. On April 22, 2015, Steven B. Aubrey filed his Fourth Amended Petition adding as additional Defendants Ira Tobolowsky, Faith Burk, Tobolowsky & Burk, PC, David P. Hendricks, and David P. Hendricks, PLLC (collectively, "Betsy Aubrey's Professionals"). On April 24, 2015, Judge Ingram ordered the lawsuit against Betsy Aubrey's Professionals to be severed from Case No. 2, and that the lawsuit against Betsy Aubrey's Professionals to be given a new docket number and style. Four days later, on April 28, 2015, Steven Aubrey filed a Notice of Nonsuit specifically dismissing the lawsuit against Betsy Aubrey's Professionals....

### CASE NO. 9:

Case No. 9 is a Petition for Writ of Mandamus filed on September 12, 2014 in the Fifth District Court of Appeals, Dallas County, Texas, by Steven Aubrey, pro se, against the Hon. Michael E. Miller, Judge of Probate Court No. 3 of Dallas County, Texas, seeking a reversal of the Court's Order vacating an Order for an Accounting. This lawsuit bears Cause No. 05-14-01172-CV. On September 17, 2014, the Court of Appeals denied Steven B. Aubrey's Writ of Mandamus....

### CASE NO. 10:

Case No. 10 is a lawsuit filed on May 22, 2015 in the United States District Court, Northern District of Texas, Dallas Division, by Steven Aubrey, pro se, against the Hon. Ingrid Michelle Warren, Judge of Probate Court No. 2 of Dallas County, Texas, seeking a declaratory judgment that a Protective Order requested by Betsy Stirratt Aubrey and signed by Judge Warren on April 24, 2015 deprived Steven B. Aubrey of his right to free speech.... This lawsuit bears Cause No. 3-15-CV-1792K. In Case No. 9, Judgment was entered against Steven Benton Aubrey on October 21, 2015 dismissing his lawsuit with prejudice....

### CASE NO. 11:

Case No. 11 is a Petition for Writ of Mandamus filed on October 16, 2013 in the 200th District Court of Travis County, Texas, by Steven Aubrey, pro se, against the Hon. Susan Kay Steig, Judge of Precinct 3 Justice of the Peace Court of Bell County, Texas, seeking an Order from the District Court vacating the Peace Bonds issued against Steven B. Aubrey. This lawsuit bears Cause No. D-GN-13-003586. The Writ of Mandamus was denied and dismissed as moot....

### CASE NO. 12:

Case No. 12 is a lawsuit filed on January 3, 2014 in the 419th District Court of Travis County, Texas, by Steven B. Aubrey, pro se, against his older brother, Richard B. Aubrey, Jr. for damages for defamation and disparagement. This lawsuit bears Cause No. D-1-GN-14-000010. Case No. 12 was transferred to Dallas County, Texas, and consolidated into Case No. 2. On April 28, 2015, Steven B. Aubrey voluntarily nonsuited his lawsuit....

### CASE NO. 13:

Case No. 13 is a Plea in Intervention filed on March 10, 2011 in the 250th District Court of Travis County, Texas, by Steven B. Aubrey, pro se, in a lawsuit brought by Brian Vodicka against Southern Methodist University, et al. This lawsuit bears Cause

cally, Tobolowsky's declarations stated in part (1) "[i]t is my opinion that the numerous lawsuits identified above which have been brought by Steven B. Aubrey, pro se, against his mother, Betsy Aubrey, have been brought for improper purposes, including to harass and to needlessly increase her cost of litigation"; (2) "[i]t is my further opinion that the claims alleged by Steven B. Aubrey against his mother are frivolous, unwarranted, and have no evidentiary support, and no prospect of any evidentiary support"; (3) "I am familiar with what constitutes reasonable and necessary legal services and what constitutes fair and reasonable attorney fees throughout the State of Texas"; and (4) "[i]t is my opinion that $250,000.00 constitutes fair and reasonable legal fees for the reasonable and necessary legal services I have rendered and performed on behalf of Betsy Aubrey in her defense of the above identified lawsuits brought against her by her son Steven B. Aubrey." The declaration by Hendricks stated in part (1) "I have performed both legal services and accounting services on behalf of Betsy Aubrey, both in her individual capacity and in her capacity as Trustee of the Aubrey Family Trust"; (2) "[a]ll income generated by the assets of the Aubrey Family Trust are [sic] paid to Betsy Aubrey as required by the terms of the Trust"; (3) the transfer to Betsy of the Trust property located in Travis County described above was made to pay off a $200,000.00 indebtedness owed to Betsy by the Trust that resulted from a previous transaction; and (4) "Steven Aubrey is wrong in his allegations that Betsy Aubrey committed an impropriety in transferring to herself the [Travis County] property."

No. D-1-GN-08-003721. Shortly after Steven B. Aubrey filed his Plea in Intervention, the lawsuit was dismissed causing the Plea

Appellant filed a February 9, 2016 "Response to [Betsy's] Motion to Determine Vexatious Litigant and Motion for Sanctions" in which he asserted he has standing to bring this lawsuit pursuant to certain definitions contained in Texas Property Code section 111.004. *See* TEX. PROP. CODE ANN. § 111.004. Also, as to the other litigations described by Betsy in her motions, appellant contended (1) "Trustee's overzealous use of the 'copy/paste' feature becomes evident by regurgitating the same cases repeatedly to make it appear as though [appellant] has been a pro se and unsuccessful plaintiff in dozens and dozens of lawsuits" and (2) "[appellant] will save the Court's valuable time and not even address the diversionary pile of spaghetti created in Trustee's motion." Further, as to the transfer of the Travis County property described above, appellant repeated verbatim the same allegation set forth above, but substituted "Trustee, Junior and David Hendricks" for "Junior, Tobolowsky, and Hendricks" as the acting persons described in the first sentence of that allegation. Additionally, as to Hendricks's declaration described above, appellant stated in part as follows:

Trustee's CPA ... submitted his declaration, which does not offer any reasons for why or why not Trustee should be removed. This declaration is designed to justify the improper transfer of property in Travis County, Texas with an unintelligible attempt to explain a phantom $200,000 indebtedness owed to Trustee. However, this declaration does not address the missing $100,000 from the sale of the property for $300,000.

Finally, in the conclusion of his response, appellant argued in part (1) "all of the

in Intervention to be determined adversely to Steven Aubrey's interest....

money earned by the trust properties bypasses Trustee and goes directly to Junior"; (2) "Trustee has transferred trust properties away from the trust and into Junior's name, actions that are against the terms of the Aubrey Family Trust and are criminal"; (3) "[Plaintiff] HAS filed multiple actions, WITH MERIT, that involve the Trust, but all have been met with malicious, vexatious, frivolous, and tactical defensive motions" (emphasis original); and (4) "Trustee is a vexatious defendant trying to maintain the current level of litigation to hide the truth about multiple assets she has gifted out of the Trust, that were to be held in her capacity as a Trustee."

Attached to appellant's response to Betsy's motions were exhibits that included (1) emails between Betsy and her son Thomas Alan Aubrey in which Betsy stated in part, "Of course I never know what's going on. I just sign what I'm told to sign"; (2) excerpts from the 2014 oral deposition of Betsy described above, including answers of "I don't know" by Betsy in response to numerous questions pertaining to the Trust, and testimony by Betsy that Junior manages the Trust for her, she "gave" the Travis County property described above to Junior, he did not "give her any money back" for that property because it was "in payment for his work on the property," she does not know what "fiduciary" means, and she believes she "do[esn't] have a responsibility much" respecting the Trust; (3) a 2014 order signed by the presiding judge of Probate Court No. 3 of Dallas County in an action by appellant against Betsy, stating that the probate court had heard a "Motion to Compel Accounting under Section 113.151 of the Texas Trusts Code" in that case and concluded appellant was entitled to "demanded accountings" respecting the Trust; and (4) a November 12, 2015 order signed by a district court in Travis County in a lawsuit by appellant

against United Heritage Credit Union ("United Heritage"), denying a motion by the defendant in that case to determine appellant a vexatious litigant. Additionally, on February 9, 2016, an "Entry of Appearance" was filed by Brian Vodicka as attorney for appellant.

A hearing on Betsy's motions was held on February 12, 2016. Neither appellant nor his counsel appeared at the hearing. At the start of the hearing, the trial court asked Betsy's counsel if he had "seen or heard from" the opposing party. Betsy's counsel replied that he had "received a Motion for Continuance over the internet" on the preceding day. The trial judge stated he had "not seen that," then stated to Betsy's counsel, "The Court's ready to proceed if you are." A "book" of documents compiled by Betsy's counsel was admitted into evidence. Those documents included the same documents contained in the appendices to Betsy's motions described above. Further, counsel for Betsy argued appellant could not prevail in the current litigation for three reasons: (1) "[Betsy] has done nothing wrong" and "[e]verything she has done has been on advice of counsel, has been through the guidance of her C.P.A. and lawyer"; (2) "[appellant] simply doesn't have standing to bring this lawsuit"; and (3) "the fact is there is a trust committee set up in the Will that is empowered with the authority to replace the trustee and to select substitute trustees" and "[t]his Court just simply doesn't have the power to overrule the trust committee in the Will itself." Additionally, counsel for Betsy (1) specifically described four of the litigations described above that were previously filed by appellant and (2) stated to the trial court that the documents admitted into evidence showed other pro se litigations brought by appellant, for a total of thirteen. After Betsy's arguments, the trial court stated in part that (1) it was

"making a specific finding that the Motion to Determine Vexatious Litigant is granted and that the Plaintiff is hereby determined to be a vexatious litigant" and (2) appellant must furnish security within ten days in the amount of $150,000.00 or the case would be subject to dismissal. Then, counsel for Betsy stated (1) Betsy was requesting $250,000.00 in sanctions against appellant and (2) that request was supported by statements made by counsel respecting his attorney's fees in his declaration described above. The trial court stated in part, "I'm going to trouble you to do a little bit more work, and that is to file—or submit to the Court a separate order with regard to your sanctions, your application for attorneys' fees as well, and I will not require another hearing, but I will consider that separately upon its receipt."

The trial court signed orders dated February 12, 2016, and February 18, 2016, granting, respectively, Betsy's motions "to determine vexatious litigant" and for sanctions.[5] On February 22, 2016, appellant, acting through counsel, filed a "Motion for Reconsideration of the Order Granting Defendant's Motion to Determine Vexatious Litigant and Motion for Sanctions." Therein, appellant contended in part "[t]he [trial court] erred, as the abundance of evidence supporting this action for removal of trustee cannot presume that [appellant] does not have a reasonable probability to prevail in the litigation." Additionally, appellant, acting pro se, and counsel for Betsy sent separate letters to the trial court dated March 24, 2016, and March 23, 2016, respectively, requesting the trial court to combine the "previous Orders of this Court" into an "Amended and Restated Final Judgment."

The trial court signed a "Final Judgment Nunc Pro Tunc" dated March 25, 2016.[6] This pro se appeal timely followed.

5. The February 18, 2016 order stated in part as follows:

> The Court finds that Plaintiff should be sanctioned as Plaintiff's lawsuit is brought for improper purposes, including to harass, to cause unnecessary delay, and to needlessly increase the cost of litigation. Further, the Court finds that allegations in the pleadings have no evidentiary support and some allegations are likely to have no evidentiary support after reasonable opportunity for further investigation or discovery. The Court finds that Plaintiff's Petition and pleadings violate Section 10.001 of the Texas Civil Practices & Remedies Code.
>
> The Court further finds that in the last approximately two and one half years, Plaintiff has brought approximately seven lawsuits against Defendant. The Court finds that such conduct has been for the purpose of harassment and to needlessly increase Defendant's cost of litigation. The Court finds that a reasonable sanction against Plaintiff for such conduct is to reimburse Defendant her reasonable and necessary cost of legal fees in these numerous lawsuits, which the Court finds to be $250,000.00. It is therefore

> ORDERED, ADJUDGED AND DECREED that Defendant Betsy Stirratt Aubrey's request for sanctions against Plaintiff Steven Aubrey is hereby GRANTED. It is further
>
> ORDERED, ADJUDGED AND DECREED that Plaintiff Steven Aubrey is ordered to pay Defendant Betsy Stirratt Aubrey the sum of $250,000.00. Defendant Betsy Stirratt Aubrey shall have execution and such other writs as may be reasonable if such sanction is not timely paid.

6. The trial court's March 25, 2016 "Final Judgment Nunc Pro Tunc" stated in part as follows:

> On February 12, 2016, this Court determined Plaintiff to be a Vexatious Litigant. As of February 12, 2016, this Court has ordered that Plaintiff Steven Benton Aubrey has been declared a Vexatious Litigant pursuant to Tex. Civ. Prac. & Rem. Code § 11.054.
>
> On February 12, 2016, this Court ordered that on and after February 12, 2016, Plaintiff Steven Benton Aubrey shall not file another lawsuit against the following individuals without first seeking and securing the

## II. VEXATIOUS LITIGANT

### A. Standard of Review

■ We review a trial court's declaration that a litigant is vexatious for an abuse of discretion. *Harris v. Rose*, 204 S.W.3d 903, 905 (Tex. App.—Dallas 2006, no pet.); *accord Cooper v. McNulty*, No. 05-15-00801-CV, 2016 WL 6093999, at *2 (Tex. App.—Dallas Oct. 19, 2016, no pet.) (mem. op.). Under this standard, we are not free to substitute our own judgment for the trial court's judgment. *Harris*, 204 S.W.3d at 905. We can find an abuse of discretion only if the trial court acts in an arbitrary or capricious manner without reference to any guiding rules or principles. *Id.*; *see also Cooper v. Campbell*, No. 05-15-00340-CV, 2016 WL 4487924, at *5 (Tex. App.—Dallas Aug. 24, 2016, no pet.) (mem. op.) ("[A]n abuse of discretion does not occur when a trial court bases its decision on conflicting evidence, as long as some evidence reasonably supports the trial court's decision.").

■ Further, where, as here, findings of fact and conclusions of law are not requested or filed, we "imply all facts necessary to support the trial court's judgment that are supported by the evidence and must affirm the trial court's judgment if it can be upheld on any legal theory supported by the evidence." *Rossmann v.*

written approval of the Dallas County Administrative Judge; to wit: Betsy Stirratt Aubrey; Richard Buck Aubrey, Jr.; the Aubrey Family Trust; Aubrey Family, LLC; Ira E. Tobolowsky; Faith G. Burk; Tobolowsky & Burk, PC; David P. Hendricks; and David P. Hendricks, PLLC.

On February 12, 2016, this Court granted Defendant sanctions against Steven Benton Aubrey in the amount of $250,000.00. On February 12, 2016, it was ordered by this Court that Betsy Stirratt Aubrey have Judgment against Steven Benton Aubrey in the amount of $250,000.00.

On February 12, 2016, this Court ordered that within 10 days of February 12, 2016,

*Bishop Colo. Retail Plaza, L.P.*, 455 S.W.3d 797, 808 (Tex. App.—Dallas 2015, pet. denied); *accord Weisfield v. Tex. Land Fin. Co.*, 162 S.W.3d 379, 381 (Tex. App.—Dallas 2005, no pet.).

### B. Applicable Law

Chapter 11 of the Texas Civil Practice and Remedies Code is titled "Vexatious Litigants." *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 11.001–.104 (West 2002 & Supp. 2016). Pursuant to section 11.051, a defendant in a litigation may, within a specified time period after filing an answer, move the trial court for an order determining that the plaintiff is a vexatious litigant and requiring the plaintiff to furnish security. *Id.* § 11.051. Further, section 11.054 provides in part,

A court may find a plaintiff a vexatious litigant if the defendant shows that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and that:

(1) the plaintiff, in a seven-year period immediately preceding the date the defendant makes the motion under Section 11.051, has commenced, prosecuted, or maintained at least five litigations as a pro se litigant other than in a small claims court that have been:

Plaintiff, as a Vexatious Litigant, was to provide security in this case in the amount of $150,000.00 pursuant to Tex. Civ. Prac. & Rem. Code § 11.055. Plaintiff failed to timely provide such security, and on March 11, 2016, this Court dismissed with prejudice Plaintiff's lawsuit against Defendant. Concurrently with the dismissal with prejudice of Plaintiff's lawsuit, Defendant took a nonsuit of her Counterclaim.

The Orders hereinabove previously granted are hereby made the Final Judgment of this Court. All relief not contained in this Final Judgment is hereby denied. Execution will issue if the monetary judgments above set out are not timely paid.

(A) finally determined adversely to the plaintiff....

*Id.* § 11.054(1)(A). If the trial court determines that the plaintiff is a vexatious litigant, it is required to order the plaintiff to furnish security for the benefit of the moving defendant and determine the date by which the security must be furnished. *Id.* § 11.055(a)–(b). If the plaintiff does not furnish the security within the time set by the trial court's order, the trial court must dismiss the litigation. *Id.* § 11.056.

The "Texas Trust Code" is contained in subtitle B of Title 9 of the Texas Property Code. *See* TEX. PROP. CODE ANN. §§ 111.001–117.012 (West 2014 & Supp. 2016). Section 113.051 of the trust code describes the "General Duty" of a trustee as follows:

The trustee shall administer the trust in good faith according to its terms and this subtitle. In the absence of any contrary terms in the trust instrument or contrary provisions of this subtitle, in administering the trust the trustee shall perform all of the duties imposed on trustees by the common law.

*Id.* § 113.051. Further, section 113.082 of the trust code is titled "Removal of Trustee" and provides in part,

(a) A trustee may be removed in accordance with the terms of the trust instrument, or, on the petition of an interested person and after hearing, a court may, in its discretion, remove a trustee and deny part or all of the trustee's compensation if:

(1) the trustee materially violated or attempted to violate the terms of the trust and the violation or attempted violation results in a material financial loss to the trust;

(2) the trustee becomes incapacitated or insolvent;

(3) the trustee fails to make an accounting that is required by law or by the terms of the trust; or

(4) the court finds other cause for removal.

(b) A beneficiary, cotrustee, or successor trustee may treat a violation resulting in removal as a breach of trust. *Id.* § 113.082(a)–(b). The trust code's definition of "interested person" states as follows:

"Interested person" means a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust. Whether a person, excluding a trustee or named beneficiary, is an interested person may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding.

*Id.* § 111.004(7). Also, the trust code (1) defines "interest" as "any interest, whether legal or equitable or both, present or future, vested or contingent, defeasible or indefeasible," *see id.* § 111.004(6), and (2) defines "beneficiary" as "a person for whose benefit property is held in trust, regardless of the nature of the interest," *see id.* § 111.004(2).

## C. Application of Law to Facts

In what we construe as appellant's first issue, appellant asserts "[t]he trial court erred granting Defendant's motion to determine vexatious litigant against Steven Aubrey, Beneficiary of the Aubrey Family Trust, incorrectly holding that he did not have standing, the trustee did nothing wrong and there were 5 actions initiated by Steven Aubrey pro se that were determined adversely against him." Additionally, appellant argues "this Court has the authority to remove Trustee, not a committee referenced by Tobolowsky."

Betsy responds in part that "since ample evidence exists in the record to support the two Trial Court Orders being appealed, this Court should affirm." Specifically, according to Betsy, (1) appellant "is a contingent remainderman of the Family Trust, not a beneficiary," and "does not have standing to pursue the claims he's alleged in this lawsuit because [his] possibility of inheriting from the Aubrey Family Trust does not create a present interest or right of title in the Aubrey Family Trust property"; (2) because the Trust specifies that "the Trust Committee shall have the power to remove the successor trustee," the trial court "simply does not have the power to overrule the trust committee, which is set up in the Will"; (3) "Betsy has committed no wrongs that would give rise to her removal as Trustee" and "[t]he declaration and other evidence supporting such an assertion was properly admitted by the Trial Court on February 12, 2016, without objection and without contradicting evidence being presented by [appellant]"; and (4) "[w]ithin the 7 years preceding Betsy's Motion to Determine Vexatious Litigant, Aubrey had commenced, prosecuted, and/or maintained, pro se, 13 litigations (far more than the 5 needed), all of which were determined adversely to him."

■ Because standing is a component of subject matter jurisdiction, we begin with Betsy's contention that appellant lacks standing respecting the claims in this lawsuit. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). "The determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted." *Mazon Assocs., Inc. v. Comerica Bank*, 195 S.W.3d 800, 803 (Tex. App.—Dallas 2006, no pet.). Standing may be predicated on statutory or common-law authority. *See Williams v. Lara*, 52 S.W.3d 171, 178–79

(Tex. 2001). When standing has been statutorily conferred, the statute itself serves as the proper framework for a standing analysis. *See, e.g., Everett v. TK–Taito, L.L.C.*, 178 S.W.3d 844, 851 (Tex. App.—Fort Worth 2005, no pet.); *In re Sullivan*, 157 S.W.3d 911, 915 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding). The party seeking relief must allege and establish standing within the parameters of the language used in the statute. *Everett*, 178 S.W.3d at 851 (citing *Scott v. Bd. of Adjustment*, 405 S.W.2d 55, 56 (Tex. 1966)).

■ To the extent that the issue of standing turns on the construction of relevant statutes, we apply a de novo standard of review. *See, e.g., Jasek v. Tex. Dep't of Family & Protective Servs.*, 348 S.W.3d 523, 528 (Tex. App.—Austin 2011, no pet.). Our primary objective in statutory construction is to give effect to the legislature's intent. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009) (op. on reh'g). "Where text is clear, text is determinative of that intent." *Id.* "Therefore, our practice when construing a statute is to recognize that the words the Legislature chooses should be the surest guide to legislative intent." *Id.*

Appellant contends (1) "[Betsy's] entire plea is premised on the supposed 'contingent' or 'possible' nature of the interests here," but "[u]nder the Property Code, such distinctions are irrelevant"; (2) appellant is both a "beneficiary" and an "interested person" under section 111.004 of the trust code; and (3) the trust code "provides specifically for a cause of action." As described above, the trust code states (1) "[a] trustee may be removed ... on the petition of an interested person," Tex. Prop. Code Ann. § 113.082(a); (2) "'[i]nterested person' means a trustee, beneficiary, or any other person having an interest in or a claim against the trust or any person who is affected by the administration of the

trust," *id.* § 111.004(7); (3) "interest" means "any interest, whether legal or equitable or both, present or future, vested or contingent, defeasible or indefeasible," *id.* § 111.004(6); and (4) "beneficiary" means "a person for whose benefit property is held in trust, regardless of the nature of the interest," *id.* § 111.004(2). Further, whether a person is an "interested person" "may vary from time to time and must be determined according to the particular purposes of and matter involved in any proceeding." *Id.* § 111.004(7).

Betsy argues that even if appellant has an "interest" in the trust, he is not an "interested person" for the "particular purposes and matter involved in the proceeding" because "his interest is too speculative and remote to bring the particular action." In support of that position, Betsy cites *Davis v. Davis*, 734 S.W.2d 707, 709–10 (Tex. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e). Also, Betsy asserts the disposition in case number six described above, in which a Travis County trial court concluded appellant lacked standing to sue United Heritage for the alleged fraudulent transfer of the Travis County property described above, "provide[s] overwhelming evidence that [appellant] does not have standing to bring the instant lawsuit."

In *Davis*, Howard Davis's mother created a trust for the benefit of Howard's four sons. *Id.* at 708. Howard's ex-wife and a bank were named co-trustees. *Id.* Howard filed a lawsuit against the co-trustees in which he (1) alleged they "breached their duties by wasting trust assets" and (2) requested an accounting, removal of the trustees, and reimbursement including interest. *Id.* The trial court granted summary judgment against Howard and he appealed. *Id.* On appeal, Howard asserted in part that he had standing respecting his lawsuit based on his status as a "residuary beneficiary." *Id.* at 709. Specifically, he

argued he had an active interest in the trust not only because it was created for the education and welfare of his children, but also because, in the event one of the beneficiaries of the trust died intestate, he would inherit the interest of that beneficiary. *Id.* The court of appeals disagreed, concluding in part (1) "[a] right to inherit does not vest until the death of the intestate" and (2) a "potential beneficiary" of a trust does not have standing to sue "for the enforcement or adjudication of a right in property that he expects to inherit." *Id.* at 709–10. Unlike *Davis*, the case before us does not involve (1) a lawsuit by a person who inherits an interest in a trust only upon the event that a trust beneficiary dies intestate or (2) any claims for accounting and reimbursement. *See id.* Therefore, we do not find *Davis* persuasive. *See Mazon Assocs., Inc.*, 195 S.W.3d at 803 ("The determination of whether a plaintiff possesses standing to assert a particular claim depends on the facts pleaded and the cause of action asserted.").

Further, the Travis County case described by Betsy involved claims by appellant against United Heritage "to redress damages caused to the Family Trust and its assets by the sale of the property to United Heritage," rather than a claim for removal of a trustee. *See Aubrey v. United Heritage Credit Union*, No. 03-16-00233-CV, 2017 WL 1404728, at *2 (Tex. App.—Austin Apr. 12, 2017, no pet. h.) (mem. op.) Therefore, we do not agree that a determination of a lack of standing in that case is "overwhelming evidence" of a lack of standing in this case. *See id.* at *4 (distinguishing "causes of action ... directed to claims against or by the trustee of a trust" from "the types of claims for damages that [appellant] seeks to bring against ... United Heritage" for purposes of standing analysis).

Based on the statutory provisions described above, we conclude that, even assuming without deciding that the nature of appellant's interest in the trust is "contingent," he is an "interested person" pursuant to the trust code and therefore has standing to bring the underlying lawsuit for removal of a trustee. *See* TEX. PROP. CODE ANN. §§ 111.004(7), 113.082(a); *Yturri v. Yturri*, 504 S.W.2d 809, 812 (Tex. App.— San Antonio 1973, no writ) (concluding that under predecessor to section 113.082(a), which provided for action for removal of trustee by "any person actually interested" in trust, plaintiff who had no interest in net income from trust and was merely remainderman as to corpus did not lack sufficient interest to enable her to maintain suit for removal of trustee, even where trustee was given full power of control and disposition of property until death). On this record, we conclude that to the extent the trial court concluded appellant lacked standing respecting his claims in the underlying lawsuit, the trial court abused its discretion. *See* PROP. §§ 111.004(7), 113.082(a); *Yturri*, 504 S.W.2d at 812. However, because lack of standing was only one of the three independent bases asserted for appellant's alleged inability to prevail in the underlying litigation, that conclusion does not end our analysis. *See Rossmann*, 455 S.W.3d at 808; *Weisfield*, 162 S.W.3d at 381.

■ Next, we consider appellant's assertion that the trial court abused its discretion by concluding Betsy showed there is no reasonable probability appellant will prevail in the instant lawsuit. We disagree with appellant's position. First, the record shows appellant's claim for alleged "self-dealing" by Betsy is based on Betsy's purported transfer of the Travis County property described above to herself for "no consideration." However, Hendricks's declaration states in part that the transfer to Betsy of the Trust property in question was made to pay off a $200,000 indebtedness owed to Betsy by the Trust that resulted from a previous transaction. Appellant cites no evidence in the record, and we have found none, to support his assertion that Betsy made a transfer of Trust property to herself, individually, without consideration.

■ Second, appellant's "breach of fiduciary duty" claim is based on appellant's assertions in his petition that (1) "[a]gainst the terms of the Trust, all of the net income flows to Junior, not to [Betsy]," and (2) Betsy "has not shown good faith in administering the trust and performing the duties imposed on her by common law pursuant to Prop. Code § 113.051." [7] Specifically, appellant contends on appeal (1) "[Betsy] has never had any interest in, nor the ability to, properly managing [sic] this Trust and has NEVER participated in the administration of the Trust, which is required by Texas law" (emphasis original), and (2) "Junior improperly receives all of the income from the retail property assets that should still belong to the Trust." In support of those contentions, appellant cites the excerpts from Betsy's 2014 oral deposition described above. However, the record shows Hendricks stated in his declaration (1) "[a]ll income generated by the

---

7. On appeal, appellant argues that the same facts described by him above constitute violation of additional provisions of the property code, including sections 112.035 (titled "Spendthrift Trusts"), 162.031 (titled "Misapplication of Trust Funds"), 162.005 (defining "intent to defraud" and other terms in context of trust funds), and 111.035 (providing terms of trust may not limit certain duties of trustee). *See* TEX. PROP. CODE ANN. §§ 112.035, 162.031, 162.005, & 111.035. Those sections were not cited or mentioned in the trial court. Therefore, appellant's arguments pertaining to those sections present nothing for this Court's review. *See* TEX. R. APP. P. 33.1.

assets of the Aubrey Family Trust are [sic] paid to Betsy Aubrey as required by the terms of the Trust" and (2) "I have performed both legal services and accounting services on behalf of Betsy Aubrey, both in her individual capacity and in her capacity as Trustee of the Aubrey Family Trust." To the extent appellant complains Betsy has not personally performed certain functions pertaining to the administration of the Trust, appellant cites no authority that she was required to do so. *See* PROP. § 113.018 ("A trustee may employ attorneys, accountants, agents, including investment agents, and brokers reasonably necessary in the administration of the trust estate."); *id.* § 117.011 (providing for trustee's delegation of investment and management functions). On this record, we conclude the trial court did not abuse its discretion by concluding Betsy met her burden under the first prong of section 11.054(1)(A) to show "there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant." TEX. CIV. PRAC. & REM. CODE ANN. § 11.054(1)(A); *see Campbell*, 2016 WL 4487924, at *5 (abuse of discretion does not occur "as long as some evidence reasonably supports the trial court's decision").

Now, we address whether appellant, in a seven-year period immediately preceding the date Betsy made her motion to declare him a vexatious litigant, had commenced, prosecuted, or maintained at least five litigations as a pro se litigant, other than in a small claims court, that were finally determined adversely to him. *See* CIV. PRAC. & REM. § 11.054(1)(A). In his brief on appeal, appellant asserts it is "undeniable" that res judicata and collateral estoppel apply to this issue, in light of the November 12,

2015 order described above denying a motion by United Heritage to determine appellant a vexatious litigant in a Travis County case. Additionally, in the "Statement of Facts" portion of his appellate brief, appellant contends in part that at the hearing on Betsy's motions, (1) "Tobolowsky used the same cases that were unsuccessfully used as proof in the Travis County hearing but he fabricated additional cases that were hybrids of the true cases and he repeated some of the cases bringing the total to thirteen," and (2) "Tobolowsky would also split cases that he had consolidated so that when [appellant] filed a nonsuit for the one consolidated case, Tobolowsky counted the nonsuit as three cases determined adverse to [appellant]." The cases described by appellant as having been "split" from "one consolidated case" were cases number two, four, and twelve from the list in Tobolowsky's declaration described above.

Betsy responds in part (1) appellant does not identify which of the thirteen cases were "fabricated" or which cases were "repeated" and (2) "even without the three cases [appellant] alleges were improperly 'split,' this prong is still satisfied because of the remaining 10 cases filed by [appellant]."

The record does not show that appellant's arguments pertaining to res judicata and collateral estoppel were asserted in the trial court, nor does appellant cite any authority on appeal respecting those doctrines or explain how they apply in this case.[8] Also, appellant does not describe which cases relied upon by Betsy in the trial court were "fabricated" or "repeated." Consequently, we conclude those argu-

---

**8.** The November 12, 2015 order described above denying a motion by United Heritage to determine appellant a vexatious litigant does not state the reason for the Travis County court's denial of that motion, nor does the record show the litigations relied upon by United Heritage in that motion.

ments present nothing for this Court's review. *See* Tex. R. App. P. 33.1, 38.1(i).

Further, even if cases number four and twelve are excluded to account for the "split" alleged by appellant, the record shows that the five litigations specifically relied upon by Betsy in her motion, i.e., cases number one, nine, ten, eleven, and thirteen described above, were commenced, prosecuted, or maintained pro se by appellant within the time period stated in section 11.054(1)(A) and were finally determined adversely to him. On this record, we conclude the trial court did not abuse its discretion by concluding the second prong of section 11.054(1)(A) was satisfied. *See* Civ. Prac. & Rem. § 11.054(1)(A); *see also Retzlaff v. GoAmerica Commc'ns Corp.*, 356 S.W.3d 689, 700 (Tex. App.—El Paso 2011, no pet.) (counting involuntary dismissals and mandamus actions toward total litigations required to satisfy second prong of section 11.054(1)(A)).

We decide against appellant on his first issue.

### III. SANCTIONS

#### A. *Standard of Review*

 We review a sanctions award under Chapter 10 of the Texas Civil Practice and Remedies Code for an abuse of discretion. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014); *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001–.006; *see also Daniels v. Indem. Ins. Co. of N. Am.*, 345 S.W.3d 736, 741 (Tex. App.—Dallas 2011, no pet.) ("The test for determining whether the trial court abused its discretion is whether it acted without reference to any guiding rules and principles to the extent the act was arbitrary or unreasonable."). When reviewing an order for sanctions, we examine the entire record to determine whether the trial court's sanctions were proper. *Daniels*, 345

S.W.3d at 741 (citing *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006)). We review the evidence in the light most favorable to the trial court's ruling and draw all reasonable inferences from the evidence to sustain the order. *Id.* "To determine if the sanctions were appropriate or just, the appellate court must ensure there is a direct nexus between the improper conduct and the sanction imposed." *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007) (citing *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003)). "[W]e will not hold that a trial court abused its discretion in levying sanctions if some evidence supports its decision." *Nath*, 446 S.W.3d at 361 (citing *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009)).

As described above, when the resolution of an issue on appeal requires the interpretation of a statute, we apply a de novo standard of review. *See, e.g., Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 177 (Tex. 2012); *Fudge v. Wall*, 308 S.W.3d 458, 460 (Tex. App.—Dallas 2010, no pet.). In construing a statute, our aim "is to determine and give effect to the Legislature's intent" and we begin with the "plain and common meaning of the statute's words." *Tex. W. Oaks Hosp.*, 371 S.W.3d at 177.

#### B. *Applicable Law*

Section 10.001 provides as follows:

The signing of a pleading or motion as required by the Texas Rules of Civil Procedure constitutes a certificate by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

(1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

.(4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

Tex. Civ. Prac. & Rem. Code Ann. § 10.001. Pursuant to section 10.002, (1) a party may make a motion for sanctions describing the specific conduct violating section 10.001, and (2) "[t]he court may award to a party prevailing on a motion under this section the reasonable expenses and attorney's fees incurred in presenting or opposing the motion, and if no due diligence is shown the court may award to the prevailing party all costs for inconvenience, harassment, and out-of-pocket expenses incurred or caused by the subject litigation." *Id.* § 10.002. A court that determines that a person has signed a pleading or motion in violation of section 10.001 may impose a sanction on the person, a party represented by the person, or both. *Id.* § 10.004(a). The sanction must be limited to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated. *Id.* § 10.004(b). A sanction may include any of the following: (1) a directive to the violator to perform, or refrain from performing, an act; (2) an order to pay a penalty into court; and (3) an order to pay to the other party the amount of the reasonable expenses incurred by the other

party because of the filing of the pleading or motion, including reasonable attorney's fees. *Id.* § 10.004(c). A court shall describe in an order imposing a sanction under Chapter 10 the conduct the court has determined violated section 10.001 and explain the basis for the sanction imposed. *Id.* § 10.005.

Generally, courts presume pleadings and other papers are filed in good faith. *See, e.g., Nath*, 446 S.W.3d at 361; *Low*, 221 S.W.3d at 614. The party seeking sanctions bears the burden of overcoming this presumption of good faith. *See Nath*, 446 S.W.3d at 361; *Low*, 221 S.W.3d at 614.

We construe trial court orders under the same rules of interpretation as those applied to other written instruments. *Payless Cashways, Inc. v. Hill*, 139 S.W.3d 793, 795 (Tex. App.—Dallas 2004, no pet.) (citing *Lone Star Cement Corp. v. Fair*, 467 S.W.2d 402, 404–05 (Tex. 1971)). If an order is unambiguous, we must construe the order in light of the literal meaning of the language used. *Id.*

### C. Application of Law to Facts

Throughout his brief in this Court, appellant refers to the trial court's February 18, 2016 order described above as "the Ex Parte Order." In the paragraph of his appellate brief titled "Issues Presented," appellant states as follows respecting the sanctions in this case:

The trial court erred granting Defendant's ex parte order for sanctions of $250,000.00 as reimbursement for two and one half years of cost and legal fees without cite [sic] a single statute or rule. The trial court erred granting Defendant's ex parte order for sanctions awarding an additional $250,000.00 without citing a single statute, rule or conduct, giving any basis for the imposed fee. The trial court erred its [sic] ex parte change of the Final Judgment into

a Final Judgment Nunc Pro Tunc, adding the ex parte $500,000.00 to the ex parte Final Judgment.

Further, in the "Statement of Facts" portion of his appellate brief, appellant contends in part,

For over six months after its issue, the existence of the Ex Parte Order was not known to either [appellant] or his lawyer. . . .

. . . The ex parte Final Judgment Nunc Pro Tunc did not reference the Ex Parte Order, leaving [appellant] in the dark as to the origin of the newly added $500,000.00. . . . While a proposed order was never filed with the clerk, and never served on other parties, the signed Ex Parte Order, discovered many months after it was issued, charges $250,000.00 of sanctions against [appellant] plus a [sic] additional $250,000.00 for no reason at all.

. . . .

On March 25, 2016, the trial court issued its Final Judgment Nunc Pro Tunc without notice of a motion and without an open court hearing. The change in the final judgment far exceeded the correction of a clerical error. In fact, the new final judgment included a substantive addition of $500,000.00, the same $500,000.00 that was hiding in the Feb. 18 Ex Parte Order against [appellant].

(citation to record omitted). Additionally, in the argument section of his appellate brief, appellant contends "[t]he trial court's Ex Parte Order that sanctioned $250,000.00 against [appellant] as punishment for lawsuits seven [sic] lawsuits over a period of 2½ years went far beyond the permitted 'reasonable expenses and attorney's fees incurred in presenting or opposing the motion' and 'expenses incurred or caused by the subject litigation,' stipulated

in Section 10.002." Finally, according to appellant,

Section 10.004(b) of the Texas Civil Practices & Remedies Code limits the trial court's sanction "to what is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated." $500,000.00 in sanctions would likely deter the wealthiest of Dallas County's multi-millionaires. The trial court's choice of sanctions is intentionally abusive towards [appellant].

■ Betsy responds in part (1) "[d]espite [appellant's] claim that he was ordered to pay sanctions of $500,000, it is Betsy's position that [appellant] was only ordered to pay $250,000 and not $500,000"; (2) appellant "cites no authority for the fact that lack of service supports a reversal of the Sanctions Order" and, "[r]egardless, the evidence in the record reflects that, at the very least, there is a fact issue as to whether or not [appellant] was served with the sanctions order"; and (3) "viewing the relevant evidence in the light most favorable to the entry of the Sanctions Order, the evidence presented by Betsy on February 12, 2016 was sufficient for the Trial Court to enter the Sanctions Order, requiring [appellant] to pay Betsy $250,000 in sanctions."

The record shows that in the February 18, 2016 order described above, the trial court stated it "finds that a reasonable sanction against Plaintiff for [the conduct described therein] is to reimburse Defendant her reasonable and necessary cost of legal fees in these numerous lawsuits, which the Court finds to be $250,000.00." Then, the trial court stated, "It is therefore," which phrase was followed by new paragraphs as follows:

ORDERED, ADJUDGED AND DECREED that Defendant Betsy Stirratt Aubrey's request for sanctions against

Plaintiff Steven Aubrey is hereby GRANTED. It is further

ORDERED, ADJUDGED AND DECREED that Plaintiff Steven Aubrey is ordered to pay Defendant Betsy Stirratt Aubrey the sum of $250,000.00. . . .

The language and paragraph structure of the February 18, 2016 order unambiguously show the trial court granted sanctions of $250,000.00 against appellant and ordered payment of sanctions in that amount. Further, the March 25, 2016 "Final Judgment Nunc Pro Tunc" stated it was incorporating orders previously granted and described those orders as including the granting of sanctions in the amount of $250,000.00 and the ordering of payment of those same sanctions in that amount. On this record, we conclude the trial court did not order appellant to pay $500,000.00 in sanctions. Consequently, we need not address any of appellant's arguments complaining as to an award of sanctions in that amount or to a purported "change" in the judgment that resulted in that amount. Further, to the extent appellant contends the delay in notice alleged by him respecting the February 18, 2016 order affects the sanctions awarded therein, he cites no authority for that position. *See* Tex. R. App. P. 38.1(i).

As described above, the trial court stated in its February 18, 2016 order that it found (1) appellant's lawsuit "is brought for improper purposes, including to harass, to cause unnecessary delay, and to needlessly increase the cost of litigation"; (2) "that allegations in the pleadings have no evidentiary support and some allegations are likely to have no evidentiary support after reasonable opportunity for further investigation or discovery"; (3) appellant's petition and pleadings "[v]iolate Section 10.001 of the Texas Civil Practices & Remedies Code"; (4) "in the last approximately two and one half years, Plaintiff has brought approximately seven lawsuits against Defendant," which conduct "has been for the purpose of harassment and to needlessly increase Defendant's cost of litigation"; and (5) "a reasonable sanction against Plaintiff for such conduct is to reimburse Defendant her reasonable and necessary cost of legal fees in these numerous lawsuits, which the Court finds to be $250,000.00."

For the same reasons set forth above in our analysis respecting Betsy's motion to determine vexatious litigant, we conclude there is some evidence in the record to support the trial court's finding that allegations in the pleadings in this case "have no evidentiary support" and "some allegations are likely to have no evidentiary support after reasonable opportunity for further investigation or discovery." Additionally, as described above, the evidence in the record included (1) copies of pleadings pertaining to the filing of seven lawsuits by appellant in which Betsy is named as a defendant; (2) emails between appellant and Betsy showing a contentious relationship between them, including a December 2012 email from Betsy informing appellant she has "excluded" him "from any inheritance" and a response by appellant to Betsy several hours later stating in part, "You have 3 days to change your mind and apologize. . . . Or else I will make it my mission to make the rest of your life miserable, as you deserve"; and (3) Tobolowsky's declarations that "[i]t is my opinion that the numerous lawsuits identified above which have been brought by Steven B. Aubrey, pro se, against his mother, Betsy Aubrey, have been brought for improper purposes, including to harass and to needlessly increase her cost of litigation"; "[i]t is my further opinion that the claims alleged by Steven B. Aubrey against his mother are frivolous, unwarranted, and have no evi-

dentiary support, and no prospect of any evidentiary support"; "I am familiar with what constitutes reasonable and necessary legal services and what constitutes fair and reasonable attorney fees throughout the State of Texas"; and "[i]t is my opinion that $250,000.00 constitutes fair and reasonable legal fees for the reasonable and necessary legal services I have rendered and performed on behalf of Betsy Aubrey in her defense of the above identified lawsuits brought against her by her son Steven B. Aubrey." That evidence supports the trial court's finding that this lawsuit was "brought for improper purposes, including to harass, to cause unnecessary delay, and to needlessly increase the cost of litigation." Accordingly, we conclude the trial court did not abuse its discretion to the extent it found appellant violated section 10.001. *See* Tex. Civ. Prac. & Rem. Code Ann. § 10.001.

As to the amount of sanctions, section 10.004(c) provides, "A sanction may include any of the following: (1) a directive to the violator to perform, or refrain from performing, an act; (2) an order to pay a penalty into court; and (3) an order to pay to the other party the amount of the reasonable expenses incurred by the other party because of the filing of the pleading or motion, including reasonable attorney's fees." *Id.* § 10.004(c). Nothing in the language of the statute specifically allows for a party's recovery of attorney's fees in previous cases as sanctions under Chapter 10. Betsy's motion requested attorney's fees and expenses pertaining not only to this lawsuit and her motion for sanctions described above, but also to six other lawsuits filed against her by appellant. Further, the record shows the amount of attorney's fees described by Tobolowsky and awarded by the trial court, i.e., $250,000.00, was based on attorney's fees in all seven of those lawsuits. In response to appellant's contention that those sanc-

tions "went far beyond" the expenses and attorney's fees provided for in Chapter 10, Betsy asserts that because the six other lawsuits are "virtually identical" to this case and were "filed with the intent to harass Betsy and cause her financial harm in pursuit of [appellant's] Mission," the sanctions properly included the attorney's fees in those cases. In support of that position, Betsy cites *Law Offices of Windle Turley, P.C. v. French,* 164 S.W.3d 487, 489–90 (Tex. App.—Dallas 2005, no pet.).

In *French,* a law firm sought to recover fees from a former client under a contingent fee agreement. *Id.* at 489. The law firm filed simultaneous, "essentially identical" lawsuits in Dallas and Tarrant counties. *Id.* The former client moved for sanctions in the Dallas lawsuit, contending the purpose of the duplicative lawsuit was to harass him. *Id.* at 490. The Dallas trial court awarded the former client sanctions in the amount of $4,876.25. *Id.* On appeal, this Court concluded (1) based on the record, the trial court could have determined the Dallas suit was filed for an improper purpose and could have viewed the Dallas lawsuit as unnecessarily prolonging and increasing the expense of litigation, and (2) "the trial court did not abuse its discretion in awarding appellees $4,876.25 in sanctions for appellant's filing of the Dallas lawsuit." *Id.* at 492.

Nothing in this Court's opinion in *French* shows sanctions in that case were sought or awarded based on attorney's fees from any case other than the case in which the motion for sanctions was filed. *See id.* Therefore, we do not find *French* instructive. Betsy cites no other authority for her position that attorney's fees in other cases can be awarded to a party as sanctions under Chapter 10, and we have found none. We conclude the trial court's award to Betsy of attorney's fees in the six

other cases in question as sanctions was not authorized by the provisions of Chapter 10. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 10.001–.006. Further, there is no evidence in the record showing what portion of the $250,000.00 in sanctions constituted attorney's fees and expenses applicable to the case before us. Consequently, we conclude the trial court abused its discretion as to the amount of the sanctions award.

When the record shows sanctions are appropriate, but the amount of the sanction is not justified by the record, or when an award of attorney's fees is justified, but the amount awarded is not supported by evidence, we may remand the case for the trial court to determine a just award. *See Melasky v. Warner*, No. 09-11-00447-CV, 2012 WL 5960310, at *4 (Tex. App.—Beaumont Nov. 29, 2012, pet. denied) (mem. op.) (citing *Low*, 221 S.W.3d at 621–22); *see also Graves v. Tomlinson*, 329 S.W.3d 128, 150–52 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (remanding case because appellate court could not determine which portion of sanctions award was attributable to non-discovery-related conduct).

We decide (1) against appellant on the portion of his second issue respecting whether Chapter 10 sanctions were warranted in this case and (2) in appellant's favor on the portion of his second issue complaining the trial court abused its discretion as to the amount of the sanctions awarded to Betsy.

### III. CONCLUSION

We decide (1) in favor of appellant on the portion of his second issue complaining the trial court abused its discretion as to the amount of the Chapter 10 sanctions awarded to Betsy and (2) against appellant on his first issue and the remaining portion of his second issue.

We reverse the trial court's award of sanctions to Betsy in the amount of $250,000.00 and remand this case to the trial court for determination of an amount of sanctions consistent with this opinion. In all other respects, the trial court's judgment is affirmed.